THE OCEAN STEAMSHIP COMPANY *v.* MATTHEWS.

1. The verdict in the plaintiff's favor for $1,000 damages for permanent and painful injuries sustained by him from a falling bale of cotton, while he was in the employment of the defendant and in the discharge of his duty in the lower hold of a ship, was not contrary to law or evidence, and was not excessive.

2. The instructions of the court which are complained of, taken in connection with the entire charge and the evidence upon which they were predicated, were as favorable as the defendant was entitled to ask.

(a) The master was not relieved from liability by the fact that the hooks from which the bale of cotton slipped might, while in their defective condition, have been used or had been used without injury.

(b) If the defect was one which the master should have known, he will be presumed to have known it. If he should have known, he was negligent in not knowing; and negligent ignorance is equivalent to knowledge. The patent and obvious character and apparent age of the defect may indicate that the master should have known it.

(c) It appearing that the servant (the plaintiff) did not know of the defective condition of the hooks, and that it was not his duty to inspect and apply them, but that his employment confined him to the lower hold of the ship, where he did not and could not see them; and it further appearing that the master, instead of furnishing safe and suitable hooks, provided such as were obviously unsafe and unfit at and before the time of the injury, and had been so long enough for their unsafe condition to have been discovered by the master in the exercise of ordinary care, the assumption that the master knew of their condition is proper; and there having been no effort to show otherwise, the verdict should stand.

December 23, 1890.

Damages. Verdict. Charge of court. Master and servant. Negligence. Before Judge HARDEN. City court of Savannah. July term, 1890.

Reported in the decision.

LAWTON & CUNNINGHAM and E. S. ELLIOTT, for plaintiff in error.

GARRARD & MELDRIM, contra.

SIMMONS, Justice.

The plaintiff, while in the employment of the defendant, and in the discharge of his duty in the lower hold of a ship, was injured by a falling bale of cotton. He alleged in his declaration, that he was hurt because the hooks by which the cotton was lowered from the upper part of the ship, were, by the negligence and default of the defendant, unsafely constructed, in disrepair, unfit for use, of defective and improper material, in an unsafe condition and unfit for the purpose for which they were being used, being so defective as not to securely hold the cotton, on account of their generally defective condition, and particularly because the points of the hooks, being worn smooth and having been forced from an acute to an obtuse angle, failed to securely catch and hold the cotton. He alleged that the defendant knew or ought to have known this; and that he himself did not know, and was injured without fault on his part.

The evidence for the plaintiff (which was the sole evidence introduced in the case), showed that he was hurt, as alleged, by the slipping of the bale from hooks which were so defective as not to securely hold the cotton, the point of one of the hooks being blunt, and the point of the other bent from its proper position. These hooks were applied to the bale by another employee in another part of the ship, who testified that although "the hooks had brought down three or four bales that afternoon and they came down all right," he "saw there was danger in one of the hooks," and that it was blunt enough to make him think the bale was going to slip. According to some of the testimony this was the first bale that came down, and the hooks had not been used before. It was also shown that the plaintiff did not know of the defective condition of the hooks, and had no opportunity to look at them when used on this occasion, and that it was not a part of his business to inspect them. Nor was this the business of the employee who applied them to the cotton, so far as appears from the evidence. According to the latter's testimony, "that was attended to by other people; when the hooks are given to us to work with, we must go ahead whether they are all right or not." The plaintiff was permanently injured; his leg broken in two places between the knee and hip, being crushed between the falling bale and the edge of a wooden cask, and thereby shortened and made crooked; he was laid up in bed and confined to his house for several months; his injuries impaired his efficiency and rendered him unable to lift heavy weights, and his general health was greatly impaired.

The jury found in favor of the plaintiff a verdict for $1,000. The court overruled a motion for a new trial by the defendant based upon the grounds (1, 2) that the verdict was contrary to law and the evidence and ex-

cessive in amount, and (3, 4, 5) that the court erred in certain charges to the jury, hereafter set out.

1. The verdict is not contrary to law and the evidence. Under the charge of the court, the jury were not allowed to return a verdict for the plaintiff unless they should find from the evidence that he was injured because of the negligence of the defendant or its employees whose duty it was to look after the hooks, in failing to provide and maintain, so far as reasonable precautions, prudence and investigation might go, implements reasonably good and safe for the performance of its work; that he was without fault himself; and that the injury was not caused by the carelessness of a co-employee in and about the same line of business with the plaintiff. The verdict, therefore, amounted to a finding that these facts were established. This finding is supported by evidence, uncontradicted by any evidence on the part of the defendant, and is approved by the judge who tried the case. These facts being established, the defendant's liability under the law stood established. Nor was the defendant relieved from liability, as was contended by counsel, by the fact that these hooks while in this defective condition might have been or had been used without injury. "The fact that a servant may, by care and caution, so operate a defective and dangerous machine as not to produce injury to his fellow-servants, does not exempt the master from his liability for an omission to exercise reasonable care and prudence in furnishing safe and suitable appliances." Shearm. & Redf. Neg. §194. Nor was the verdict excessive in amount. The evidence establishes the painful, permanent and disabling character of the injuries sustained by the plaintiff, who was a young man twenty-four years of age, with a reasonable expectation of many years of life before him.

2. The 3d, 4th and 5th grounds of the motion, which

may be considered together, complain of certain instructions of the court as to the *onus* of proof. These instructions were, in substance, that if the plaintiff should show that the implements employed by the defendant or furnished to its employees were not fit implements, but were in a defective and improper condition, and the defect was such as to indicate that the defendant should have known or did know of its existence, the presumption would be that the defendant knew, and the burden would be cast upon it to show that it did not know. It is true that the instructions complained of in the 3d and 4th grounds, standing alone, seem to cast this burden upon the defendant if the condition of the implements is merely shown to have been unfit and improper, but these instructions are qualified by the instruction complained of in the 5th ground, which follows, and by which the plaintiff is in addition required to show that this unfit and improper condition was such as to indicate that the master should have known or did know of it. The language is: "From the mere happening of an injury to the servant from defective appliances, there is no presumption that the master is at fault; the servant must go further and show negligence on the part of the master, unless the defect in the appliances was such as to indicate that the master should have known or did know of its existence." Elsewhere in the charge the jury were given to understand that the defective condition might be so recent that the defendant could not be presumed to know of it; and that the defendant in that event would not be responsible; the court saying: "If these hooks were in an improper condition, and had become in an improper condition so recently that the Ocean Steamship Company could not be presumed to know of it, then the Ocean Steamship Company would not be responsible." Taking these

instructions together and in connection with the entire charge and the evidence upon which they were predicated, the charge on this subject was quite as favorable as the defendant was entitled to ask.

It is a well-established proposition that if the defect was one which the master should have known, he will be presumed to have known it. If he should have known, he was negligent in not knowing; and negligent ignorance is equivalent to knowledge. (*Schmidt* v. *Block*, 76 *Ga.* 823; and authorities cited *infra*.) When the plaintiff has shown that the master ought to have known, the law does not put upon him the additional burden of proving that the master knew what it was his duty to know. On this subject counsel for the plaintiff in error cited the case of McMillan v. Railroad Co., 20 Barb. 450; but as to that case and others on the same line it is said (2 Thomp. Neg. 994, n.): "Some courts have held that actual notice is necessary, ignoring the fact that negligent ignorance is, for this purpose, equivalent to notice. .. But the rule as thus stated is so obviously unsound as not to require discussion. Moreover, the highest court in the State where these rulings occur has held otherwise." "Ignorance on the part of the employer will be negligence in a case in which any proper inquiry would have obtained the necessary information, and where the duty to inquire was plainly imperative." *Id.* 996.

It is also clear that the defect might of itself indicate that the master should have known of it. Its patent and obvious character, and the apparent age of the defect, may indicate this. The master, being under the duty not only to furnish safe and suitable implements to his employees but to keep them in that condition, is bound to know the condition of his property so far as proper inspection will enable him to know it; and where it is proved that there was a defect, and that

defect was obvious, and on its face showed that it had existed long enough before the injury to have been discovered by the master in the exercise of ordinary diligence, it is at once apparent that if the master did not know of it he might have known, and that he failed in his duty to inspect and know. For this reason the *Nelms* case, 83 *Ga.* 771, upon which much stress was laid by counsel for the plaintiff in error, is distinguishable from this case. That case was cited to show that no presumption arises against the master from the mere fact that the implement which caused the injury was defective. That proposition is true, and so the court charged in this case; but in the *Nelms* case the defect, which was disclosed by the sudden and unlooked-for breaking of a hammer, was latent and could not have been ascertained by the exercise of ordinary care. Here no latent defect was involved. The defect, if there was one, was patent, and not only was discoverable by the exercise of ordinary care, but could not have escaped the observation of a merely casual looker-on. And such was the case before the implement was used at all on this occasion. The plaintiff in error, it is true, contended that the condition of the implement was not defective, but did not contend that the condition, whatever it was, whether defective or not defective, was not perfectly obvious. The defect was obvious to the eye if not to the mind of the master. Once prove the contested fact which the court required the plaintiff to show, that the condition was defective, it could not be denied that it was patent. There was nothing latent about the bluntness of the one hook or the bent condition of the other. Nor was this defective condition suddenly brought about. It was shown, and was in the very nature of things apparent, that the bluntness came about by gradual wear, and should have been anticipated and guarded against

by the master and must have been seen if the implements had been looked at within any reasonable time before the injury.

The remaining authorities cited on this subject for the plaintiff in error are also distinguishable from the case at bar. In Humphreys v. Railroad Co. (W. Va.), 10 S. E. Rep. 39, the court says, it did not appear that the defect was such as inspection would have detected; and besides the plaintiff knew of it and was the only one that knew, so far as appeared from the evidence. In Mobile, etc. Railroad Co. v. Thomas, 42 Ala. 672, the court says: "It might be that in the use of the engine the unsafeness had never been developed." In Columbus, etc. Railroad Co. v. Troesch, 68 Ill. 545, 18 Am. Rep. 578, it did not appear that the engine was obviously unsafe or defective; indeed the court held that the plaintiff failed to prove that there was a defect which could have been known by the exercise of diligence. Besides, that case as far as it goes is in accord with the charge complained of in the present case, for it holds in effect that in order to charge the master with notice of the defect, it is enough to show that in the exercise of diligence he ought to have known of it. And it is not held, either in that case or the others cited, that the defect may not of itself be sufficient to show that the master ought to have known, and thus raise the presumption that he did know.

Of the abundant authority which could be cited to sustain what has here been said, the following will suffice:

In Shearman and Redfield on Negligence, §223, it is said: "It is enough to prove that the materials were defective in such respect that if a proper inspection had been maintained, the defects would probably have been ascertained in time to have prevented the injury." See also *Id*. §194.

In Wood on Master and Servant, §346, it is said: "The fact that the defect might have been ascertained by proper examination and care on the master's part, is sufficient evidence of negligence to charge him with liability." See also *Id.* §§348, 368.

In Wedgwood *v.* Railroad Co., 44 Wisc. 44, it was held that the defect being an obvious one, the refusal of the court to charge that knowledge of the defect by the master must be proved was not error. It was said that if the defect " was of such a character that the defendant by the exercise of ordinary care could have discovered and repaired it, it was liable for an injury sustained by an employee in consequence of such defect."

In a recent Massachusetts case (Griffin *v.* Railroad Co., 1 Annot. Lawy. Rep. 698), the court held that the spreading of a coupling-link which injured an employee was *prima facie* evidence of negligence, and cast upon the master the burden of explanation. It was said: " If the link was not sound and suitable for use, the fact of its being used in that condition properly calls for explanation from the defendant; and if under such circumstances the defendant fails to put in any evidence, some inference against it may be drawn therefrom. The fact may be susceptible of an explanation sufficient to exonerate the defendant, but in the absence of such explanation we think the jury might properly infer negligence on the part of the defendant." We cite this last case, not that we fully approve it, but to show how far one of the ablest courts in the Union has gone upon the subject. See also Cowles *v.* Railroad, 84 N. C. 309, distinguished from case of latent defect in Hudson *v.* Railroad Co., by the same court, 10 S. E. Rep. 675 ; also Smith *v.* Railroad, 18 Fed. Rep. 304.

It being shown, therefore, by the plaintiff in this case, that he did not know of the defective condition of

these implements, and that it was not his duty to in-spect and apply them, but that his employment con-fined him to the lower hold of the ship where he did not and could not see them; and it being further shown that the defendant, whose duty it was to provide safe and suitable implements, on the contrary provided and employed implements which at and before the time of the injury were obviously unsafe and unfit, and on their face showed that they had been so long enough for their unsafe condition to have been discovered by the master in the exercise of ordinary diligence, it is not too much to assume that the defendant ought to have known of this condition; and it is asking little enough to require it to show that it did not know, or offer some excuse for not knowing. This defence, if it existed, could easily have been made; the proof must have lain within the defendant's reach; the hooks were in its possession—presumably so, at least; and if the plaintiff's evidence as to the condition of the hooks was untrue, the defendant could easily have disproved it. But it did not even attempt to do this; it neither denied nor explained; it introduced no evidence.

The most that is complained of as to this charge is that it did not require the plaintiff to prove enough. It is certain, however, from the evidence, that whatever was charged, he did prove enough. So upon the whole the verdict should stand.          *Judgment affirmed.*