CASE 4—ACTION TO RECOVER DAMAGES FOR PERSONAL INJURIES—
    MAY 28.

# Chesapeake & N. R. Co. v. Venable.

APPEAL FROM ALLEN CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.     AFFIRMED.

REMOVAL OF CAUSE TO FEDERAL COURT—ACTION FOR INJURY INFLICTED
    IN ANOTHER STATE—FAILURE TO ALLEGE FOREIGN LAW—FELLOW-
    SERVANTS—FAILURE TO KEEP RAILROAD TRACK IN REPAIR—PLEAD-
    ING—KNOWLEDGE OF DEFECT.

Held:    1. An action against a railroad company to recover damages for a personal injury will not be removed to the federal court upon the petition of one against whom no relief is sought, though he alleges that he was at the time of the injury, and still is, the owner of the railroad in the operation of which the injury was inflicted.
2. In an action to recover damages under a statute of another State, it is not necessary to allege the measure of damages under the foreign statute, as the court will presume, unless the contrary appears, that it is the same as it would be under the Kentucky statute.

3. A railroad brakeman may recover of the master for the ordinary neglect of the servants charged with the duty of keeping the roadbed in repair, as he and they were not in the same common employment.

4. Ignorance of a defect in the roadbed, in a case where there was a duty to inquire, and proper inquiry would have procured information, constitutes negligence.

5. As a brakeman injured by the derailment of a car, which was caused by a defective roadbed, was under no duty and had no opportunity to examine the roadbed, it was not necessary for him, in suing the company for the injury, to aver or prove that he did not know of the existence of the defect.

6. The failure of the petition to allege that defendant knew, or by the exercise of reasonable care could have known, of the existence of the defect, was cured by a verdict for plaintiff; it being averred that defendant negligently permitted its cross-ties and roadbed to become rotten and defective.

E. B. DRAKE, ATTORNEY FOR APPELLANT.

The matters herein complained of will be discussed under the following heads, to-wit:

1. Petition for removal.

2. Demurrer to petition of appellee.

. Peremptory instruction asked by appellant.

4. The damages are excessive.

5. The verdict not sustained by law and evidence.

6. Errors of law excepted to at the time.

7. The court failed to properly instruct the jury.

1. It is clearly shown that one Walter Weber, a non-resident of Kentucky, is the sole owner of the railroad, proper bond is made and only demurrer is filed while the defects, if any, could not be reached in that way.

2. Demurrer to petition. The petition alleges that by the gross negligence of the appellant in permitting its track, cross-ties and roadbed to be and become defective, rotten and dangerous, by reason of which the wreck occurred, and plaintiff, who was a brakeman, was injured.

There was no allegation that the plaintiff did not know of the unsoundness of the roadbed, and as a matter of law, if he knew of the unsoundness and voluntarily went upon it, he accepted the risk.

3. Peremptory instruction. He says he set the brake back from No. 1 to No. 8 when he felt it get off the track (the train was a mixed one of freight and passenger); that he set brake on No. 8, and got on No. 7 and set brake on No. 7 and started to step

from car No. 7 to a wood car No. 6, when something flew up
.and struck him, presumably the running board on car No. 7,
which he says he knew was loose, and he is supported in this
statement by a negro named Baker.

We claim that on this evidence the plaintiff is not entitled to
.recover and the court should have given the jury a peremp-
tory instruction to find for defendant.

4. The damages, even if appellee is entitled to any, are very much
in excess of the injury received. We think the evidence shows
he was not permanently injured, and if entitled to any damages,
$500 would have °been full compensation.

The 5th, 6th and 7th we will discuss under one head.   The
first instruction permits a recovery for ordinary negligence
while we contend that it takes gross negligence to authorize a
recovery by an employee. The court refused to give instruc-
tion asked by appellant on contributory negligence, especially
. as to whether the appellee at the time he was injured was in
.his place as front brakeman.

The appellee alleges rotten cross-ties as the direct cause of
injury, and the proof by him shows that he was out of his
:place when the wreck occurred; still he got on car No. 7,
which was safe and sound, jumped off of it or was knocked
off by a loose running board which was not, nor could be, af-
fected by the wreck; proof taken upon same and about same,
.and then the court refused to give an instruction covering
the points therein.

### AUTHORITIES CITED.

Sullivan v. Lou. Bridge Co., 9 Bush, 81; Alexander v. L. &
N. R. R. Co., 83 Ky., 597; L. & N. R. R. Co. v. Coniff, 16 Rep.,
297 and 691; Same v. Brantley, 96 Ky., 297; E. Tenn. v. Camp-
,bell 15 Rep., 813; L. & N. R. R. Co. v. Lowe, 14 Rep., 850;
Boganschutz v. South, 84 Ky., 338; Wintuskee v. L. & N. R.
R. Co., 14 Rep., 579; Cahill v. L. & N. R. R. Co., 92 Ky., 345;
Mitcherson v. Gray, 4 B. Mon., 400; McCain v. L. & N. R. R.
Co., 13 Rep., 809.

BROWDER & BROWDER ATTORNEYS FOR APPELLANT. '

This suit was brought in this State, Allen circuit court, by
a resident of this State, alleging gross negligence for an
injury received by appellee as a brakeman for appellant, in
Sumner county, Tennessee. There is no allegation in the pe-
tition that the cause of action was maintainable under the laws
óf the State of Tennessee, no averment that the laws of said
State authorize a recovery of damages upon the alleged facts

in the petition. Upon the trial there was no evidence intro-
duced or offered to prove that the laws of the State of Tennes-
see gave the appellee any right of action upon the State of
case declared upon in the petition. No allegation concerning
the measure of damages which, under the Tennessee law, ought
to be applied by the jury if any recovery be had.

The proceedings from beginning to end, as shown by the
pleadings and proof, indicate that the trial court treated the
case as though it had originated in the State of Kentucky, and
within the jurisdiction of the Allen circuit court.

A general demurrer to the petition was entered by appellant
and overruled. At the close of the evidence by appellee, the
appellant moved the court to instruct the jury to find for the
railroad company. This motion was overruled. A similar mo-
tion was made by appellant at the close of all the evidence
which was also overruled. To all three of these judgments
the appellant excepted.

Omitting all other questions, we submit that the trial court
erred to the substantial prejudice of the appellant in overrul-
ing this demurrer and motions, and for these errors alone
there should be a reversal of this case.

CASES CITED.

Bruce's Admr. v. Cin. R. R. Co., 83 Ky., 174; Dennick v.
Railroad Co., 103 U. S., 18; McDonald v. Mallory, 77 N. Y.,
547; Leonard v Columbia Steam Nav. Co., 84 N. Y., 48; L.
& N. R. R. Co. v. Whitlow, 19 Ky. Law Rep., 1931.

McQUOWN & BRADBURN, FOR APPELLEE. (J. M. WILKINS OF
COUNSEL.)

1. "Petition for removal." In this case one Weber presented a
petition claiming to be the owner of the Chesapeake & Nash-
ville Railway, and to be a non-resident of this State, and asked
to have the case removed to the federal court. The petition
did not show that he was at the time *operating* the railroad,
or that the Chesapeake & Nashville Railroad Company was not
then operating the road. Upon this showing his motion for
removal was overruled. He was not a party to the suit, and
did not ask to be made a party.

2. "Excessive damages." The record discloses the fact that while
the appellee was in the service of appellant as brakeman, two
or three cars were derailed and appellee thrown from the top
of the car a distance of thirty-five feet. He was severely hurt.
His thigh bone crushed and broken at the joint; confined to
his bed for nearly two months; suffered great pain, and when

able to leave his bed the injured leg was shorter than the other, and he was obliged to use a crutch in order to walk at all. The physicians who examined him expressed the opinion that the injury was permanent.

3. "Verdict not sustained by the evidence." This ground of complaint will be considered in connection with appellant's motion for peremptory instructions.

This contention is based upon the alleged fact that appellee was injured by reason of a loose "running board" on top of the car from which he was thrown, and not because of the gross negligence of appellant in suffering its roadbed to be out of repair. The allegation of the petition is that appellant was guilty of gross negligence in allowing rotten cross-ties to remain in the track at the point where the accident occurred; that these rotten ties caused the track to spread and derail the cars, throwing the plaintiff therefrom a great distance and with great force to his permanent injury. The evidence fully sustained these allegations.

4. Instructions. The instructions are in accord with the law announced by this court in the case of Greer v. L. & N. R. R. Co., 94 Ky., 169, and are applicable to the facts proven in this case.

### AUTHORITIES CITED.

Electric Line Co. v. Allen, 19 Ky. Law Rep., 1656; Louisville Railway v. Russell's Admr., 20 Ky. Law Rep., 1246; Greer v. L. & N. R. R. Co., 94 Ky, 169; Collins Case, 2 Duvall, 114.

OPINION OF THE COURT BY JUDGE DuRELLE—AFFIRMING.

Appellee brought suit against appellant railroad company, alleging that he was a brakeman in the employ of the company, which was the owner of and engaged in operating a line of railroad from Scottsville, Ky., to Gallatin, Tenn., and that, while he was so employed, by reason of the gross negligence of the company in suffering the ties of its roadbed at a place in Sumner county, Tenn., to become rotten and defective, the rails spread under the weight of the cars, a car was derailed, and appellee thrown violently to the ground and injured, for which he sought damages.

One Weber filed a petition and bond, seeking the removal of the suit to the United States circuit court for the district of Kentucky, upon the ground that at decretal sale under order of the United States circuit court for the middle district of Tennessee, some six years prior to the injury, he became, and still was, the sole owner of the Chesapeake and Nashville Railroad; that the amount involved was more than $2,000; and that he (the petitioner) was a citizen of New York, and appellee was a citizen of Kentucky. The circuit court refused to remove the case, and, we think, properly, as Weber had nothing whatever to do with the controversy in this case. He was not a party, no relief was sought against him, and, so far as this record discloses, it was entirely immaterial to him whether appellee recovered judgment or not.

The company answered, denying the averments of negligence, and pleading contributory negligence, which was denied by the reply. The trial having resulted in a verdict and judgment for appellee, the company urges numerous grounds for reversal.

A ground insisted on with some degree of earnestness is that the demurrer should have been sustained, because the pleading shows that the injury was received in Tennessee, and there is no allegation concerning the measure of damages which, under the Tennessee law, ought to be applied by the jury. In support of this proposition, Bruce's Adm'r v. Railroad Co., 83 Ky., 174, is cited. It is admitted that that case was upon a cause of action given by the Tennessee statute, and sought a recovery not allowed by the common law. The existence and nature of the Tennessee statute under which that suit was brought were specially set up in the petition, and so the question here raised was not presented in that case. The court there

said in an opinion by Judge Lewis: "There is no doctrine better settled than that common law actions, transitory in their nature, will lie in this State, if process be served here on the defendant, although the cause of action arose in another State; and this rule has, from the beginning, been applied as well to actions *ex delicto* as to those *ex contractu*; for, in the case of Watts v. Thomas, 2 Bibb, 458, it was held that an action for assault and battery committed in the State of Indiana, then a territory, would undoubtedly lie in a court of this State." It was contended in that case that, as the cause of action was not a common law right, the rule stated did not apply, but the court held that in that respect there was no distinction between a common-law right and a statutory right. No question was made or decided as to the necessity for pleading the law of the State under which the right of action arose. Whatever may be the rule as to statutory rights, it is well settled that it is unnecessary to plead or prove the law of a foreign State unless it differs from the *lex fori*. Where a party seeks to recover or defend under a foreign law, such law must be pleaded and proved like any other fact; but in the absence of averment and proof, the rule is that foreign States, whose system of jurisprudence is derived from the same source as our own, are presumed to be governed by the same law. So, in Watts v. Thomas, referred to in the Bruce case, the question was whether for an assault and battery in the Indiana Territory an action would lie in a court of this State; and it was held, on the authority of Mostyn v. Fabrigas, 1 Cowp. 161, that it would lie. No question was made of pleading or proof of the law of the Indiana Territory. The rule is thus stated in Brimhall v. Van Campen, 8 Minn., 13 (Gil. 1); 82 Am. Dec., 118: "The statute and common law of our sister States are facts to

be proved, as any other facts in a cause, by the party who seeks to take advantage of any difference that may exist between such laws and our own. Our courts can take judicial notice of no law but our own and those enacted by the federal government. In the absence of proof concerning the laws of other States, the courts presume they are the same as our own, and decide accordingly."

It is argued that the evidence shows that appellee was not injured by the defective ties, but by a defective running-board on the top of a car which was not derailed. There was considerable conflict of testimony, and some evidence tending to show that appellee may have jumped from the car on which he was, as the car which left the track went over upon the opposite side of the road from that on which appellee was found. This, however, was a question peculiarly for the jury, and was properly submitted to them under the instructions. Nor do we think the case presented was such as would justify a peremptory instruction.

We are of opinion that the instructions correctly state the law on the question of ordinary and gross neglect. Appellee was entitled to recover for ordinary neglect, if proven, as those in charge of the repair of the roadbed were not engaged in the same common employment with those engaged in running the train. In 2 Thomp. Neg., 985, it is said: "It is the duty of railroad companies to keep their works and all portions of their track in such repair, and so watched and tended, as to insure the safety of all who may lawfully be upon them, whether passengers or servants or others. They are bound to furnish a safe road, and sufficient and safe machinery and cars. The legal implication is that they will have and keep a safe track, and adopt suitable instruments and means with which to carry on their business. They can provide all this by the use

of the requisite care and foresight, and if they fail to do so, they are guilty of a breach of duty, and are liable for the consequences. . . . The supreme court of Pennsylvania has declared that a railroad company is under an obligation to keep a sound track for the safety of all persons who are transported over it, whether passengers or servants. This is deemed a direct and immediate duty, the non-performance of which will not be excused by the remote negligence of its servants who fail to report its condition or put it in repair. If the substructure carrying the rails is suffered to lie until it has become rotten and unsafe, this is deemed negligence of the company itself, and not merely that of its servants. Casualty from such a cause is not one of the ordinary perils which presumptively every one incurs who takes service with the company. It is not likened to the breaking of a rail from mere accident, or from some cause immediately traceable to the negligence of another employe." So, as the master is charged with knowledge of the probable consequence of his acts, or of acts which he directs or of which he is cognizant, and as, with regard to the rights of employes engaged in running the trains, he is supposed to have actual supervision of the cars of the roadbed, he is responsible for ordinary neglect in the procuring or maintenance of machinery and appliances. And ignorance of the condition of the roadbed, in a case where there was a duty to inquire, and proper inquiry would have procured information, is sufficient to constitute negligence. As indicated in the Volz Case, 95 Ky. 192, 24 S. W., 119, the right of the employe to have proper tools, appliances, and a reasonably safe place in which to work, is a contract right in the employe, unless, with knowledge of the defects, or under cir-

Chesapeake & N. R. Co. v. Venable.

cumstances from which the law charges him with knowledge, he continues in the employment. But it was not alleged in the petition either that appellee did not know of the defective roadbed, or that appellant did, or could by the exercise of reasonable diligence have known it. Under the circumstances of this case, the defect being alleged in the roadbed, which, as brakeman, appellee was under no duty and had no opportunity to examine, we do not think it necessary to aver or prove that appellee did not know of the existence of the defect. But it is urged that an averment that the master knew of the existence of the defect, or by the exercise of reasonable care could have known it, was essential, and that this defect was not cured by the pleadings, nor by a submission of that question to the jury by the instructions. The majority of the court, however, are of opinion that the maintenance of the roadbed in proper condition is a matter which, in law, is supposed to be under the personal supervision of the master, in so far as it affects the safety of the servants engaged in operating the train, and that therefore the averment that the company negligently permitted its crossties and roadbed to become rotten and defective is a sufficient averment to support the verdict. For the reasons given, the judgment is affirmed.

Whole court sitting.