#### OF THE

## STATE OF IOWA

#### AT

## DES MOINES, SEPTEMBER TERM A. D. 1905

#### AND IN THE FIFTY-NINTH YEAR OF THE STATE.

---

WADDY CALLOWAY, Administrator, etc., Appellant, v. AGAR PACKING COMPANY, Appellee.

Master and servant: SAFE PLACE TO WORK: EVIDENCE. The evidence in an action for the death of a packing house employé, who was caught by an unguarded shaft, is reviewed and held sufficient to take the case to the jury on the question of defendant's failure to furnish plaintiff a safe place to work.

Contributory negligence: EVIDENCE. Due care must be shown by one alleging that an injury resulted from the negligence of another, and this is a question for the jury unless the evidence is such that but one conclusion can be drawn by reasonable

minds.   Evidence held to require a submission of decedent's contributory negligence.

**Assumption of risk.**   There can be no assumption of the risk incidental to an unsafe place to work where there was neither knowledge of the danger nor conditions rendering ignorance of the same inexcusable.

*Appeal from Polk County District Court.*— HON. JAMES A. HOWE, Judge.

### WEDNESDAY, OCTOBER 18, 1905.

ACTION at law by plaintiff, as administrator of the estate of George Calloway, deceased, to recover damages for the death of said George Calloway, caused, as alleged, by the negligence of defendant.   At the close of the evidence for plaintiff there was a directed verdict for defendant, and plaintiff appeals.   *Reversed.*

*Spurrier, Forbes & Mills,* for appellant.

*Carr, Hewitt, Parker & Wright,* for appellee.

BISHOP, J.— The motion to direct a verdict was based upon substantially these grounds:   (1) There was no evidence of negligence on the part of defendant.   (2) The evidence made it appear that plaintiff's decedent was guilty of contributory negligence.   (3) The evidence made it appear that there had been an assumption of the risk.

I.   The defendant operates a packing house in the city of Des Moines, and the plaintiff's decedent, a boy 14 years of age, was in its employ.   The negligence alleged on the part

1. MASTER AND SERVANT: safe place to work; evidence.

of defendant was in not providing a safe place to work.   A careful reading of the evidence satisfies us that the jury would have been warranted in finding the conditions and circumstances under which the boy met his death to be as follows:   The hog-killing house of defendant is so arranged that the hogs are driven

up a chute or inclined way to the second story, where they enter what is designated as a " receiving pen." From there, as needed, they are driven through a narrow chute into a catch pen, and from thence into the shackling pen. The driving is accomplished by the use of a whip furnished by defendant, consisting of a stem or handle about eighteen inches long, to which there is attached at one end a strong lash two or three feet long, while at the other end there is a thong loop designed to pass around the wrist of the user and thus avoid loss of the whip. The drivers walk along a passageway at the side of the chute, and whip the hogs into the receiving pen. On top of the fencework forming the pens, and leading up to the gate into the shackling pen, is a board, laid flatwise, upon which the drivers walk when driving the hogs from the receiving into the shackling pen. Now, passing crosswise over the chute leading from the receiving pen to the catch pen, and about four or five feet above the floor, is a revolving shaft constituting part of the machinery of the plant, and this was not boxed, nor was protection afforded against the same in any other way.

Owing to the fact that the room was illy lighted, such shaft was but dimly discernible. On the morning of the accident the boy, Calloway, was taken from other work in which he had previously been engaged, and for the first time directed to assist in driving the hogs up the chute into the receiving pen, and thence into the shackling pen. Very shortly after going to work, and while standing on the footboard near the catch pen, his whiplash caught on the rapidly revolving shaft, and, the loop being fastened about his wrist, he was whirled to an instant death. It does not appear that he had been warned of the danger to be apprehended from the shaft, and there is no direct evidence to the effect that he knew of the existence thereof. Surely upon these fact conditions there may fairly be predicated the assertion of an unsafe place to work. And this would be true, even in the absence of any statutory provision requiring the shaft to

be guarded. Code Supp. 1902, Sec. 4999b. The rules under which negligence may be charged, where a master fails to furnish a safe place to work, and which imposes a duty upon him to warn and instruct against dangers for any reason not obvious, are too well understood to require a citation of authorities.

II. It is the rule in this state that one complaining of the negligence of another must make it appear that on his own part he was in the exercise of due care; and the question

2. CONTRIBUTORY NEGLIGENCE: evidence. of due care is always for the jury, where upon the facts shown reasonable minds might reach a different conclusion. The cases announcing these rules are familiar to the profession. Now, should we concede, and for present purposes we may do so, that the boy, Calloway, was of sufficient age and possessed of sufficient intelligence to bring him within the general operation of the rule, still our reading of the record makes it plain that, respecting the question of care on his part, the case was peculiarly one for the jury. What transpired immediately preceding the accident no one saw. The boy was seen standing on the running board with his whip in hand a moment before, and next as he was being whirled to his death. While it may be doubtful if at the precise time any hogs were passing through from the receiving pen to the shackling pen, yet such had been going on almost constantly, and it is certain that hogs were in both pens. For all that appears the boy was where he had the right to be, and, as we have seen, there is no direct evidence that he had been made aware of the presence of the shaft, or that he knew of the danger to be apprehended therefrom. Should it be said, therefore, by way of conclusion, that, while waiting a call to drive on more hogs, he stood there idly cracking his whip, no conclusive presumption of a want of due care could attach to his acts or conduct.

III. What has already been said disposes of the proposition included in the motion that no liability attached to the defendant, for that the risk of accident such as occurred

had been assumed.  There is no such thing as an assumption

3. ASSUMPTION    of risk incidental to an unsafe place for work,
OF RISK.           where knowledge of the danger is wanting.
Calloway had the right to assume in the first instance that
the place was safe.  It was for the defendant to show either
knowledge or that the conditions were such that ignorance
was inexcusable.  And the question involved was one for the
jury.  *Nicholas v. Railway,* 90 Iowa, 85; *Stomne v. Han-
ford,* 108 Iowa, 137; *Cushman v. Fuel Co.,* 116 Iowa, 618;
*Anderson v. Railway,* 109 Iowa, 524.

We have not attempted to follow all the lines of argu-
ment as made by counsel, and the points of the evidence have
been stated most favorable to plaintiff, as we are required to
do.  On the whole, it is our conclusion that the case should
have been submitted to the jury; and the case will be re-
manded, that such may obtain.— *Reversed.*