WALTER O. WARNER, Appellant, v. SPALDING & KEARNS et al., Appellees.

MASTER AND SERVANT: Place for Work—Servant Making Own
1 Place. The rule that, where the work itself creates the danger which resulted in injury to the servant, the master is not liable, has no application where the employee was injured by stepping into a well concealed beneath a door which he was helping to remove from a floor, in preparing to lay cement upon the floor.

MASTER AND SERVANT: Place for Work—Inspection—Premises
2 Owned by Another. The duty of the master to inspect or to ascertain whether hidden dangers are present in the place where

the servant is directed to work, is precisely the same, whether the master owns the place in which the servant is working, or it is owned by another.

MASTER AND SERVANT: Place for Work—Reliance of Servant on
3    Master's Care. A servant has the right to assume that the master has ascertained that the working place is safe, and, when directed by the master to clear a floor of refuse, is not required to inspect the premises, and is not authorized to make a preliminary search to ascertain whether he may, in safety, obey the direction.

MASTER AND SERVANT: Place for Work—Master's Duty as to
4    Safe Place—Applies as to Hidden Dangers. The master is under the duty to furnish an employee a reasonably safe working place, and he is bound to take reasonable care to have the place in which he directs his servant to work, reasonably safe for the doing of the work, and free from latent and hidden dangers; and, as regarding this duty, the employee and employer do not stand on an equal footing. There is no duty on the part of the servant of inspection as to such dangers, and he does not assume the risk consequent upon the failure of the master to discharge such duty. .

MASTER AND SERVANT: Place for Work—Employer's Liability
5    for Hidden Dangers—Knowledge and Duty to Know. An employer may be liable as to hidden or latent defects, *though he lack actual knowledge thereof*, if there be a duty to obtain the knowledge. Being ignorant may be equivalent to knowledge, if a proper inquiry would have procured information of the latent defect.

MASTER AND SERVANT: Place for Work—Degree of Care Re-
6    quired—Ordinary Care Sufficient as to Latent Defects. ' The employer has performed his duty if he has used ordinary and reasonable care to ascertain whether the working place is free from hidden dangers, and such ordinary care does not involve the anticipation of every possible contingency which may happen. He is not liable where the defect, was so secret, so latent, so occult, or not so apparent as to be discovered on inspection or visible on examination.

MASTER AND SERVANT: Contributory Negligence—Assumption
7    of Risk—Evidence. Evidence reviewed, and held that the employee of a building contractor did not, as a matter of law, assume the risk of injury from a concealed well in a floor covered by a door which he was directed to move.

*Appeal from Jefferson District Court.—C. W. VERMILION,*
Judge.

## MAY 14, 1919.

ACTION to recover for personal injuries alleged to
have been sustained while one Walter O. Warner was in
the employ of the defendant. A verdict was directed for
the defendant, and plaintiff appeals.—*Reversed and re-*
*manded.*

*Ralph H. Munro,* for appellant.

*Leggett & McKemey,* for appellees.

SALINGER, J.—I. The defendants are contractors and
builders, and had contracted and were preparing to lay a
concrete floor. The plaintiff was employed in this work as
a helper, and was under the direction of a foreman. Just
prior to the time of the injury, the foreman directed plain-
tiff to assist other employees in clearing away and carrying
off old boards and other rubbish lying on the floor. This
was required, to prepare for laying said cement floor. Up-
on this direction, the plaintiff and other employees en-
gaged in carrying away said boards and rubbish. While
they were so engaged, they lifted the rear end of an old
door, lying flat on the floor, and having the appearance
of having been used as a mortar board. A fellow employee
lifted the front end, and, when all stepped on with this door,
plaintiff stepped directly into an old well concealed be-
neath said door. Neither plaintiff, his fellow employees,
nor the defendants had any actual knowledge that there
was such an opening beneath that door. Neither had any
reason to anticipate the existence of the said hidden open-
ing, and, of course, plaintiff was never warned of its ex-
istence. This was the evidence when plaintiff closed his
case. Thereupon, the defendants moved for a directed

verdict, on the ground that the evidence fails to disclose any negligence or want of reasonable care on their part, or that the injury was due to any negligence on their part; that it shows plaintiff had every opportunity to investigate and know whether or not there was hidden danger beneath said door; that, by the use of ordinary care and diligence on his part, he could have discovered and avoided his injury; that, on the whole evidence, no cause has been established under the claims of the petition; and, further, that the evidence shows affirmatively plaintiff was guilty of contributory negligence. This motion was sustained. The record indicates that this was done on two grounds: First, that defendants did not own the premises, and therefore had no greater duty to inspect the premises or make inquiry concerning hidden dangers than had the plaintiff; second, that the premises were safe until they were made unsafe by the work done by plaintiff, i. e., that the danger which caused the injury to plaintiff was created by the work he himself was doing.

We are clear that the motion should not have been sustained on the reasoning last stated. It is true the rule that the master must furnish a safe place to work has no application where the work itself creates the danger which results in injury to the servant. The rule is a sound one, but is inapplicable here. It applies where, say, the servant engages in tearing down a wall, and is injured by the bricks that his labor precipitates upon him. But we fail to see how this rule governs the picking up of boards from a floor as a preparation for laying cement upon that floor.

1. MASTER AND SERVANT: place for work: servant making own place.

Neither do we find a distinction persuasive which rests upon the fact that a master builder employed his servants on or in a building owned by someone other than the master.

See *Clark v. Union I. & F. Co.,* 234 Mo. 436
(137 S. W. 577). Assume there was a duty
to inspect the premises in question, or to
ascertain whether hidden dangers were
present in the place in which the servant
was directed to work, and these duties are precisely the
same, whether the master owns the place in which the serv-
ant works, or labors in carrying out a contract made by the
master to do work on property owned by another. Elim-
inating, for the present, the question of
contributory negligence, and it can fairly
be said that the trial court sustained the
motion for an instructed verdict in accord-
ance with a statement made in response to
a contention by the attorney for the plaintiff, that defend-
ant should have first gone into the building and turned over
the refuse lying there, in order to determine that no hazard
was lurking, the response made by the trial judge being,
"That is just what the plaintiff and the other helpers were
employed to do." The position taken by this response seems
to eliminate whether the jury could find the master was
negligent, all inquiry into whether there was a relative
duty to inspect, inquiry into whether, as between employer
and employee, the duty to inspect rested upon the latter,
and whether it may be said, as matter of law, that the duty
to furnish a safe place wherein to work is discharged by
showing that the master had no actual knowledge that the
place wherein he had directed the servant to work was un-
safe by reason of latent danger. The one fact that the mas-
ter, through the foreman, had directed this plaintiff to do
the work, would seem, of itself, to dispose of the claim that
the duty to inspect was that of the servant, and not that of
the master. As to any direction concerning work involved
in the employment, the employee was under duty prompt-
ly to obey the directions of his superior, placed there by the

*2. MASTER AND SERVANT: place for work: inspection: premises owned by another.*

*3. MASTER AND SERVANT: place for work: reliance of servant on master's care.*

defendant to direct him.   See *Hamm v. Bettendorf Axle
Co.*, 147 Iowa 681; *McGuire v. Waterloo & C. F. U. M. Co.*,
137 Iowa 447.   Being directed to clear this floor, he was
not required, and was not authorized, to make a preliminary
search to ascertain whether he might in safety obey the
directions of that superior.   See *Cincinnati, I., St. L. & C.
R. Co. v. Roesch*, 126 Ind. 445 (26 N. E. 171).   Of course,
the final conclusion depends upon whether the master was
bound to make reasonable effort to ascertain that the place
wherein the work was to be done was a safe one.   If that
was his duty, it was not the duty of the servant, even if it
be assumed he was authorized to make such preliminary
investigation.   He had a right to assume that the master
had ascertained that the working place was safe.   The cases
of *Jacobson v. United States Gypsum Co.*, 144 Iowa 1, and
*Hardy v. Chicago, R. I. & P. R. Co.*, 149 Iowa 41, *Herr v.
Green*, 156 Iowa 532, *Aga v. Harbach*, 140 Iowa 606, *Kroe-
ger v. Marsh Bridge Co.*, 138 Iowa 376, and *Winslow v. Com-
mercial Bldg. Co.*, 147 Iowa 238, when rightly analyzed,
hold nothing to the contrary.   Neither can we agree with
the contention of the appellee that plaintiff had a better
opportunity for knowing the well was under this door than
the defendants had.   Be that as it may, an assumption that
the servant had a right to investigate is quite immaterial, if
it was the duty of the employer to ascertain that no latent
dangers lurked where he had directed his servant to labor.

It is quite apparent, then, that at this point
4. MASTER AND
SERVANT :
place for work:
master's duty
as to safe
place: applies
as to hidden
dangers.
the controlling question is whether the fact
that the cause of the injury was latent and
hidden, and the further fact that the de-
fendants had no actual knowledge that such
dangers existed, as matter of law bar re-
covery by the plaintiff.

II. For the sake of argument, we may concede the
statement of 26 Cyc. 1241, that:

"Where a danger is as open and obvious to the servant as to the master, or where the servant has better means of knowledge than the master, he will be charged with such negligence as to bar a recovery."

That does not touch what is to be the rule where neither has the better means, or where the danger is obvious to neither. The text declares further that:

"Where it does not appear that the master knew, or with ordinary care ought to have known, of the defect which caused the injury, and it does appear that the servant had equal means with the master of ascertaining its existence, the servant cannot recover."

If this may be construed to shift the ascertainment of latent and hidden dangers from master to servant, we cannot endorse it. It is hornbook law that the master is under duty to furnish the employee a reasonably safe working place. *Winslow v. Commercial Bldg. Co.*, 147 Iowa 238. That there is such an obligation of necessity carries with it a duty to ascertain that the place is safe. Since that is the duty of the employer, he may not escape liability by an insistence that the employee may not recover unless he performs the duty placed upon the employer. The master is bound to take reasonable care to have the place in which he directs his servant to work reasonably safe for the doing of the work, and free from latent and concealed dangers. *Leutcritz v. Ice C. & S. Co.*, 82 N. J. L. 251 (83 Atl. 176). This case holds that, in the absence of knowledge to the contrary, a servant has the right to assume that his master has exercised due care and diligence to fulfill the obligations imposed upon him by law, and, therefore, does not assume the risk consequent upon the failure of the master to discharge his duty. That duty is to take reasonable care to have the place in which he directs the servant to work reasonably safe for the doing of the work, and free from latent and concealed dangers. It is said in *Cin-*

*cinnati, I., St. L. & C. R. Co. v. Roesch,* 126 Ind. 445 (26 N. E. 171):

"It is, of course, a conceded proposition that it is the duty of an employer to furnish suitable implements for the use of his employee in the performance of his duties, and a safe and suitable place at or in which to prosecute the work assigned him to do. * * * An employee has the right to repose confidence in the prudence and caution of his employer, and rely upon the safety and suitableness of implements or appliances with or about which he is required to work, and that the place assigned him to work is safe from any hidden or undisclosed perils which are not open and obvious to his senses."

To like effect is *Fitter v. Iowa Tel. Co.,* 143 Iowa 689; *Galloway v. Agar Packing Co.,* 129 Iowa 1; and *Western Stone Co. v. Muscial,* 196 Ill. 382 (63 N. E. 664). The most that can be found in *Stone v. Oregon City Mfg. Co.,* 4 Ore. 52, is that an employer who provides machinery and controls its operation must see that it is suitable, and if an injury to the workman happens by reason of a defect unknown to the latter, and which the employer, by use of ordinary care, could have cured, the employer is liable for the injury. The duty of inspection is the duty of the master, and not that of the servant. *Ocean S. S. Co. v. Matthews,* 86 Ga. 418 (12 S. E. 632); *Chesapeake & N. R. Co. v. Venable,* 111 Ky. 41 (63 S. W. 35). The master and vice principals, such as foremen, have the duty of making and continuing inspection. *Wise v. Lillie,* 84 Kan. 86 (113 Pac. 403, 404); *Winslow v. Commercial Bldg. Co.,* 147 Iowa 238; *Houston v. Brush & Curtis,* 66 Vt. 331 (29 Atl. 380).

One argument by appellee assumes that the master and the servant stand on an equal footing: i. e., both have the like duty of inspection and ascertainment. But this assumes, not only that both have equal knowledge and means

of knowledge, but, as well, that both have equal duty to obtain knowledge. The flaw is that, as seen, it is held by the overwhelming weight of authority that the duty is that of the master, and, consequently, not that of the servant. To what we have said it can be added that *Clark v. Union I. & F. Co.*, 234 Mo. 436 (137 S. W. 577), holds that the two do not stand on an equal footing regarding this duty; and in *Houston v. Brush & Curtis,* 66 Vt. 331 (29 Atl. 380), the trial court was sustained in refusing a request to charge that the duty to inspect was as much the duty of the servant as of the master.

   If all this be so, how can it be said that the servant has a duty of inspection, and that, if he has as good an opportunity to ascertain as the master, the servant may not recover?

### 2-a

   It can scarcely be that the duty of inspection and of ascertaining whether the working place is safe is limited to ascertaining whether or not the working place is free from obvious dangers. If that were the limit of the rule, it would have little to operate upon. Ordinarily, the servant would be in no danger from such obvious perils, even if the master took no steps to ascertain whether such existed. It must be, then, that the duty of providing a safe working place includes reasonable care in ascertaining whether such place has any hidden or latent dangers. And that there is such duty is the settled law. See *Clark v. Union I. & F. Co.*, 234 Mo. 436 (137 S. W. 577), wherein it is held to be a continuing duty on part of the master and of his foreman to make inspection regarding hidden or secret dangers. See, also, *Western Stone Co. v. Muscial,* 196 Ill. 382 (63 N. E. 664); *Winslow v. Commercial Bldg. Co.,* 147 Iowa 238.

   III.   The vitals of the answer is that defendant had neither knowledge or suspicion of the existence of a well

within the building, and received its first knowledge thereof about the time plaintiff stepped therein. But since it is upon the master to ascertain, within reason, whether the working place is free from latent and hidden dangers, if this answer is to be effective we should have to hold that the master owes no duty to ascertain whether there be latent perils, unless he actually knows that such peril exists. Once more, there would be a rule without room for its application. Any rule requiring action as to hidden and latent danger contemplates the existence of danger that is latent and hidden. A defect known to the master is neither latent nor hidden. To meet the necessities of the appellee's case at this point, we should have to declare the rule was that the master owes no duty with reference to latent defects and perils unless these are neither latent nor hidden, but are known to him. We agree with appellee that, in *Calloway v. Agar Packing Co.*, 129 Iowa 1, and in *Martin v. Des Moines E. L. Co.*, 131 Iowa 724, the defendant was held liable because it did have personal knowledge of the danger. But that there is liability where the master knows of the danger, of course, does not establish that he may not be held liable though he does not have actual knowledge. And it is well settled that he may be made to respond though he lack such actual knowledge. 3 Labatt on Master & Servant (2d Ed.) Section 1022; *Houston v. Brush & Curtis*, 66 Vt. 331 (29 Atl. 380); *Every v. Rains*, 84 Kan. 560 (115 Pac. 114). On proper analysis, it will be found the authorities are quite in harmony upon the proposition that, for all practical purposes, actual knowledge is supplied by constructive knowledge (*Wise v. Lillie*, 84 Kan. 86 [113 Pac. 403, 404]); that failure to have knowledge is no defense if there is a duty to obtain the knowledge, and that duty was not performed,—if the exercise of reasonable care

*Marginal note:* 5. MASTER AND SERVANT: place for work: employer's liability for hidden dangers: knowledge and duty to know.

would have obtained actual knowledge. And in most cases, the liability of the master is placed upon the ground that, since there is an obligation to furnish a safe place to work, and a duty to make inspection to ascertain whether such place is safe, it is no defense that hidden perils were not known, unless it may be held that no reasonable performance of the duty to furnish safe place and to make inspection would have made known the latent peril. The only effect of proving that the master had no actual knowledge is to cast upon the servant the burden of proving that such ignorance was culpable. 3 Labatt on Master & Servant (2d Ed.), Sections 1022, 1023. Whether there is such culpability is primarily a question for the jury. 3 Labatt on Master & Servant (2d Ed.), Section 979; *Every v. Rains,* 84 Kan. 560 (115 Pac. 114). Therefore, the jury may be sustained in finding that there was a culpable neglect on the master's part though he had not actual knowledge of the latent defect, if it can be sustained in finding that the employer might have ascertained the existence of such defect by use of ordinary care (*Stone v. Oregon City Mfg. Co.,* 4 Ore. 52; *Every v. Rains,* 84 Kan. 560 [115 Pac. 114]; *Houston v. Brush & Curtis,* 66 Vt. 331 [29 Atl. 380]; 3 Labatt on Master & Servant [2d Ed.], Sections 1022, 1023, 1024. *Wise v. Lillie,* 84 Kan. 86 [113 Pac. 403]); if it may find that the master should have known of the defect, or ought to have known of it (*Ocean S. S. Co. v. Matthews,* 86 Ga. 418 [12 S. E. 632]; 3 Labatt on Master & Servant [2d Ed.], Section 1024; *Houston v. Brush & Curtis,* 66 Vt. 331 [29 Atl. 380]; *Paterson v. Wallace & Co.,* 1 Macq. H. L. 748). In a word, where knowledge is essential to charge the master with negligence, his being ignorant may be equivalent to knowledge if proper inquiry would have procured information. *Schmidt v. Block,* 76 Ga. 823; *Ocean S. S. Co. v. Matthews,* 86 Ga. 418 (12 S. E. 632); 2 Thompson on Negligence, Note on page 994; 3 Labatt on Master & Servant

(2d Ed.), Sections 1023, 1024; *Chesapeake & N. R. Co. v. Venable,* 111 Ky. 41 (63 S. W. 35) ; 1 Shearman & Redfield on Negligence, Section 93.

We find but one discordant note. In *Skellenger v. Chicago & N. W. R. Co.,* 61 Iowa 714, the main question was whether there had been a negligent disregard of a signal given the engineer by an injured brakeman. But the condition of a draw bar was also in the case. Speaking to that, it was casually remarked that, "as to driving in the draw bar, there is no evidence whatever that any of the officers of defendant had any knowledge that the draw bar was in any way defective, or that it was defective in its original construction," and that "without some evidence on this question, there could be no recovery for that defect, if there was any defect." If it is to be treated as authoritative, it makes a most startling pronouncement. Followed to its logical conclusion, a railroad carrier corporation might equip its cars with appliances so defective as to be a trap for life and limb, and yet it would escape liability, as matter of law, unless an injured employee were able to show that the officers of the corporation had actual knowledge of the defect. No support for such a rule is afforded by *Arcade File Works v. Juteau,* 15 Ind. App. 460 (40 N. E. 818). There, the plaintiff alleged that the employer did have knowledge, and the case turns upon requiring the proof to meet such plea. The *Skellenger* case runs counter to all authority. And it makes no reference to *Greenleaf v. Illinois Cent. R. Co.,* 29 Iowa 14, which holds that, if a car, when constructed, lacks appliances necessary for the safety of the employees, and continues in that condition when put into use and kept there, it is unnecessary to show any further knowledge of the defect on part of defendant, in order to fix its liability. We do not find that the *Skellenger* decision has ever been cited.

3-a

True, the master is not bound to exercise super care. He performs his duty if he has used ordinary and reasonable care to ascertain whether the working place is free from hidden dangers. *Western Stone Co. v.*

6. MASTER AND
SERVANT:
place for work:
degree of care
required:
ordinary care
sufficient as to
latent defects.

*Muscial,* 196 Ill. 382 (63 N. E. 664). True, such ordinary care does not involve the anticipation of every possible contingency which may happen. *Long v. Johnson County Tel. Co.,* 134 Iowa 336. And see *Fairmount Cem. Assn. v. Davis,* 4 Colo. App. 570 (36 Pac. 911). Liability is made only by "a neglect to use ordinary prudence and diligence to discover defects." Cooley on Torts (1st Ed.), at page 556; *Burke v. Witherbee,* 98 N. Y. 562; *Hoskins v. Stewart,* 57 Hun 380 (10 N. Y. Supp. 833). Accordingly, it has been said the master is not liable where the defect was so secret, or latent, or occult, or not so apparent as to be discovered on inspection or visible on examination; and that no culpability was predicable, where the most careful scrutiny would not have disclosed the defect, and where there was no weakness apparent on ordinary observation. 3 Labatt on Master & Servant (2d Ed.), Section 1025. But that these defendants were not bound to exercise super care does not settle that the jury here could not in reason have found this master failed to use ordinary and reasonable care and vigilance,—could not so find that reasonable inspection would have disclosed this well. See *Western Stone Co. v. Muscial,* 196 Ill. 382 (63 N. E. 664). The most that may be said is that the employer did not ascertain the existence of the well because it made no examination as to the safety of the place where the concrete floor was to be laid. It may not well be claimed that it would have been an unheard-of proceeding had the foreman investigated the condition of the place upon which the cement covering was to be spread, in order to learn whether what lay beneath

the rubbish and this particular door was in fit condition for the application of the cement. Concede, for the sake of argument, that the master had no reason to anticipate that a well was under this door. Yet, had he made ordinarily careful preparation for the work to be done, he must have discovered the well. And at this point, one argument by the appellee is most significant. It tells us that, if the plaintiff had made use of his senses, he could and would have discovered the well; that he was bound to have made such discovery, if he had moved this board or door either to the right or to the left. Why, then, should it be said that the master is freed from responsibility on the ground that no reasonable and ordinary effort on his part could have discovered this defect? If so little effort on part of the servant could have discovered it, why is it unreasonable to hold that it was for the jury to say whether the master failed in ordinary care to ascertain the defect?

IV. There was no warrant for directing a verdict against plaintiff on the ground that he had assumed the existence of this well as a risk incident to his employment.

7. MASTER AND SERVANT: contributory negligence: assumption of risk: evidence. What has been said in the main disposes of this proposition. The jury could find that plaintiff had, in reason, the right to assume that the master had performed his duty. He did not assume anything due to negligent failure to perform that duty.

V. Much of all this is applicable to the question whether a directed verdict was justified by contributory negligence on part of plaintiff. Appellee urges it was free from negligence, as matter of law, because, in reason, it could not have anticipated the existence of the well. Is it not somewhat inconsistent to claim, too, that plaintiff was guilty of negligence, as matter of law, in failing to anticipate and discover the well? On the question of contributory negligence, it must ever be kept in mind that, since the jury

could find that ordinary care on part of the master would have discovered the defect, it could find that the servant was not negligent, because he had the right to assume that such reasonable care had been exercised.

We are constrained to hold that it was error to instruct a verdict, as was done, and that the questions whether defendant was negligent, and whether plaintiff contributed to his injury by his own negligence, and assumption of risk, were at least questions for a jury. On this appeal, we do not enter upon what, if anything, is settled as matter of law. See *Ney v. Eastern Iowa Tel. Co.*, 185 Iowa 610.—*Reversed and remanded.*

LADD, C. J., WEAVER, PRESTON, and STEVENS, JJ., concur.