THE SOLOMON RAILROAD COMPANY V. JACKSON S. JONES.

1. CONSTRUCTION OF RAILROAD; *Presumption; Liability for Injuries.* Where a railroad corporation is formed, the construction of the road will, in the absence of any showing to the contrary, be presumed to be done by the corporation, and it will be responsible for injuries resulting from negligence in such construction.

2. PRESUMPTIONS *as to Agent's Acts.* Where a president of a corporation appears as the active agent in the execution of any work, parties employed by him have a right to assume that he is acting for the corporation, and that his acts in that respect are its acts, and binding upon it.

3. RAILROAD CORPORATION; *Employé; Personal Injuries; Recovery.* Where a railroad corporation enters into a written contract for the entire construction of its road, and immediately thereafter such contract is by the contractor assigned to the president of the corporation, who proceeds to construct the road, and the fact of this contract is not made public, and the employés have no notice of its existence, but are simply employed to do work, and in the course of such work one is injured through negligence for which the employer is responsible: *Held,* That such employé can recover from the corporation for such injuries.

4. RAILROAD MACHINERY; *Duty of Master to Employés.* It is the duty of a master not only in the first instance to make reasonable efforts to supply to his employés safe and suitable machinery, tools, etc., but also thereafter to make like efforts to keep such machinery, etc., in safe and serviceable condition; and to that end he must make all needed inspections and examinations.

5. HAND CAR—*Injuries, Patent and Latent; Examination.* Where two hand cars collide and the patent injuries to one of them are serious, and such as to indicate great violence in the collision, it is the duty of the railroad corporation to make a reasonable examination and inspection of the injured car to see if there be no latent injuries.

6. REASONABLE EXAMINATION—*Question for Jury.* What is a reasonable examination and inspection, and to what parts of the car it must be specially directed, will depend upon the particular circumstances of each case, and presents generally a question of fact for a jury.

7. VERIFIED PETITION, *as Evidence.* A verified petition filed in one case by a party is competent evidence against such party on the trial of another case, as a statement or admission, but is not conclusive, and carries nothing of estoppel.

8. RAILROAD COMPANY, *Nature of Notice to.* Notwithstanding the statute now provides (Comp. Laws 1879, p. 784, ¿ 29,) that every railroad company shall be liable for all damages done to any employé in consequence

of any negligence of its agents, or by any mismanagement of its engineers or other employés, the knowledge or notice, act or omission for which the company is responsible, must be that of some agent or employé having authority or duty in the premises.

*Error from Mitchell District Court.*

ACTION brought by *Jones* against *The Railroad Company*, to recover damages for bodily injuries, alleged to have been received by plaintiff while in the employment of the defendant company. January 6, 1882, verdict and judgment for plaintiff for $4,250. The defendant brings this judgment here for review. The opinion states the facts.

*J. P. Usher*, and *Chas. Monroe*, for plaintiff in error.
*A. H. Ellis*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action brought by defendant in error, plaintiff below, to recover damages for personal injuries received, as alleged, while in the employ of defendant. The facts are, that on November 19, 1879, plaintiff was employed in surfacing the track on the line of defendant's railroad. On the morning of that day, he started from Beloit in a hand-car with other laborers. He was working the handle of the car, and after going a short distance the handle broke, in consequence of which he fell out in front of the car and was run over and injured. The case came on for trial in December, 1881, before a jury, and resulted in a verdict and judgment for plaintiff in the sum of $4,250. The entire testimony was preserved, and the whole case is before us for review. We shall notice only three questions, they being the only ones of sufficient importance to require examination.

1. Was the verdict against the evidence? and in this plaintiff in error asserts two propositions: one, that the relation of employer and employé is not shown to have existed between defendant and plaintiff, and therefore the defendant was in no wise responsible for what took place; the other,

that the testimony does not warrant a finding of negligence against anyone.

2. Did the court err in admitting a certified copy of a petition in mandamus, filed in this court?

3. Did the court err in the seventh instruction, given at its own instance? Of these in their order.

Did the testimony warrant a finding that the relation of employer and employé existed between the parties, so as to render the company liable for any negligence in causing the injuries? This question must be answered in the affirmative. The claim of the railroad company is, first, that the road was constructed under a contract, and that the contractor and not it was responsible for any negligence in the construction; and second, that the road as constructed was on the 10th of November, nine days before the injury, turned over for operation to the Kansas Pacific railway company, and that it and not the defendant was responsible for any negligence subsequent thereto. It appears that the company was organized in August, 1877, and that D. M. Edgerton was the president, and continued to occupy that office until sometime after the injury complained of. He was also vice president of the Kansas Pacific railroad company. On August 17, 1877, at a stockholders' meeting, the president was by resolution authorized to make all necessary arrangements and such contracts as he might deem best, subject to the approval of the board of directors, for the construction of the road from Solomon City to Beloit. In May, 1878, mortgage bonds to the amount of $10,000 per mile were authorized. J. P. Usher subscribed 20,000 shares of stock. Outside of this and one or two township and county subscriptions, there were only 15 or 20 shares of stock issued, and these were paid for in services. On the 15th of May, 1878, there was executed a contract by Edgerton, the president, on behalf of the railroad company and J. P. Usher, by which the latter agreed to construct the road, and the company in payment therefor was to give its entire issue of mortgage bonds, all local aid voted or subscribed to the company, and credit

said Usher with full payment of his subscription of 20,000 shares. This contract was by Usher formally assigned to Edgerton, the president. On July 1, 1879, at a meeting of the directors, the contract between the president and Usher and his assigns was ratified and confirmed, the contract and the assignment to Edgerton being fully entered on the minutes of this meeting. The records of the directors' meetings also show a resolution authorizing the president to operate the railroad of the company, or to make any agreement or contract he may deem advisable with the receivers of the Kansas Pacific railway company and others for the operation of the road; also another resolution thanking the president for his successful completion of the road; also another resolution authorizing the president to receive from the county of Ottawa the bonds voted by it; also another resolution that H. C. Clements be appoined agent to receive and receipt for all moneys due or to become due from the government of the United States for the transportation of mails, troops, and supplies. These last two resolutions were of date September 30, 1879. These are all the matters that appear upon the records of the directors' or stockholders' meetings in reference to the constructing of the road, or the operation of the same, or in reference to the contract with Usher, and its assignment to Edgerton. Of course, an implication arises from the existence of the contract, that the work was done by the contractor; but there are other facts to be considered. The plaintiff and other laborers testified that they were employed by the defendant. It is not pretended that the employés were notified of this contract, nor that its existence was in any manner made public. The ostensible and active agent was the president of the corporation. Some of the superintendents and principal men in the construction testified that they were in the employ of the Kansas Pacific company, had no other employment, and were sent by it to take charge of the construction of this road. Some of the payments were in Kansas Pacific checks, and some were made by Edgerton personally. There was no report to

the company defendant of any arrangement made by the
president with the Kansas Pacific for the construction or op-
eration of the road, and no approval by it of any such ar-
rangement. A separate time-table for the road was issued,
signed, it is true, by parties who were officers of the Kansas
Pacific. There was testimony of some parties that the road
was turned over to the Kansas Pacific on November 10, but
no notice was given to the employés of a change of employers;
and while wages were reduced on the 10th, notice of this
reduction was not given till the 1st of December. The com-
pany's resolution indicated that something was due and to
become due from the government for the transportation of
troops, mails, etc.; it authorized the president to apply for
and receive the county bonds due it; it congratulated him, as
president, on the completion of the road. From these and
some other minor matters, it seems to us that the actual facts
of the case were that the Kansas Pacific was the real builder
and owner of this road; that for reasons not disclosed, it
caused the creation of the corporation defendant, and in its
name built the road. But there are two good reasons why
the jury were justified in holding the defendant as the party
responsible in this matter.

Where a corporation is organized for the purpose of doing
any work, the work will be presumed, in the absence of any
showing to the contrary, to be done by it, and it will be held
responsible for all that transpires. Especially is this true of
a railroad corporation, for to it alone has the state given the
privilege of exercising the right of eminent domain. And
where the state grants a franchise of such importance, it has
a right to assume for itself and all citizens that the party re-
ceiving the franchise is executing the work, and responsible
for all that is done in such execution. Indeed, without some
authority from the state it cannot transfer the franchise, or
divest itself of responsibility; so where all that is patent to
the public is the franchise, and the work done under it, the pub-
lic has a right to treat the beneficiary of the franchise as re-
sponsible for the work.

Again, where the president of a corporation appears as the active agent in the execution of a work, all parties employed by him have a right to assume that he is acting for the corporation, and that his acts are its acts and binding upon it. It is not to be presumed that he is an independent contractor. Perhaps a different rule might obtain in the case of a third party, one having no contractual relations with the work. As to that question, it will be time enough to consider it when it arises. Here the plaintiff stood in contractual relations to the work. Nothing was public save the franchise, the doing of the work, and the active agency of the president in such work. The employés understood they were working for the company, and had a right to regard it as the principal, and hold it responsible for payment of wages and negligence in the management of affairs.

Again, did the testimony warrant a finding of negligence? Here, the facts are these: Three hand-cars were in use by a gang of from forty to fifty laborers, working under three foremen. No question is made as to the sufficiency of the car in question up to November 18, the day before the injury complained of. On that day there was a collision between this car and one of the others. The collision was violent enough to shatter the lifting handles of this car. How much other damage was done is not positively established. There was testimony that on the morning of the 19th some of the hands noticed a crack in one of the wheels, and also that the wheels wabbled a little as the car got to running. Plaintiff was not present on the 18th, and knew nothing of the collision. On the morning of the 19th, the men, two foremen being present, put the two uninjured cars on the track, and were going off to their work with them alone. But the other foreman, who seems to have been the head foreman, came down just at that time and told the men to take the injured car also. Plaintiff got upon the injured car and commenced working the lever handle. After going about a mile and a half he saw some mud on the track at a road-crossing, and thinking it would require more motion to

take the car over the mud, gave the handle a little jerk and it broke, and he fell out and was run over. The handle at the other end broke at the same time. Both breaks were within the iron rings or clasps, which, some twelve or fourteen inches from each end, circle the handle and connect it with arms running down to the machinery below. Now the contention of plaintiff is, that at the collision the day before, this lever handle was cracked, and that in consequence thereof it broke at the little extra effort made to pass the car over the mud; that the patent injury from the collision was so great that common prudence required the most careful examination for latent injuries before further use of the car, and none having been made, the company was guilty of negligence. It is not claimed that the crack in the handle, if crack there was, was visible, the point of fracture being within the iron ring or clasp; but it is insisted that injury to the lever handle might naturally have been expected from such a collision, and therefore it should have been especially and carefully examined.

We think the claim of plaintiff must be sustained. It cannot be affirmed that negligence was proved, so that a verdict to the contrary would have to be set aside as against the testimony. But there was a fair question of fact presented upon which a verdict either way could not be disturbed in this court. There was evidently a violent collision. The shattering of the lifting handles disclosed this. The conduct of the men in leaving this car and attempting to start with only the others, is very suggestive as to the quantity of injury as well as to the fears of the employés. It will not be doubted that the duty of the company is not only in the first instance to make reasonable efforts to supply machinery, tools, etc., safe and sufficient, but also to make like efforts to keep such machinery, etc., in good condition, and to this end must make all reasonable and necessary inspections and examinations. (*Braun v. C. R. I. & P. Rld. Co.*, 53 Iowa, 595; *Greenleaf v. I. C. Rld. Co.*, 29 Iowa, 14; *Buzzell v. Lacoma Mfg. Co.*, 48 Me. 113; *Shanny v. Androscoggin Mills*, 66 Me. 420; *Snow v. Hou-*

*satonic Rld. Co.*, 8 Allen, 441; same case, 13 Allen, 443; *Ford v. Fitchburg Rld. Co.*, 110 Mass. 241; *C. & N. W. Rld. Co. v. Jackson*, 55 Ill. 492; *Brabbets v. C. & N. W. Rld. Co.*, 38 Wis. 298; *Porter v. Hannibal & St. J. Rld. Co.*, 71 Mo. 66; *Laning v. N. Y. C. Rld. Co.*, 49 N. Y. 521; Pierce on Railroads, 365.) We conclude therefore that upon neither ground can it be held that the verdict was against the evidence.

Did the court err in admitting a certified copy of a petition in mandamus filed by defendant in this court? The only objections made in the district court were those of irrelevancy and incompetency. The objections were not well taken. While an allegation in a verified petition in another case is not an estoppel, and does not conclude the party making it —and so the court instructed — it is competent evidence against him, just as a declaration or admission made by him in any other manner and place.

The only remaining question arises on the 7th instruction. That reads as follows:

"On the other hand, if you should believe from the evidence that the handle or lever of the hand-car was injured and unfit for the purpose it was used for, and that the fellow-servants of plaintiff knew of such defect or injury, or could have discovered it by the exercise of reasonable and ordinary care, then you should find for plaintiff, provided you further believe he was in the employ of defendant."

In order to apppreciate the question arising upon this instruction, it must be borne in mind that there were some forty to fifty laborers using these hand-cars, and that they were under the direction of three foremen. These foremen and laborers were all the employés of the defendant shown to have any use or knowledge of these cars during the 18th and 19th of November. Some of the laborers testified to knowledge of the collision, the injury to the lifting handles, and the unsteady motion of the car. And from the testimony it might fairly be inferred that most of the laborers were fully aware of such collision and injury. Now the language of this instruction is general: if "the fellow-servants of plaintiff" knew or could have discovered. No distinction is made as

to the employment or duties of those for whose knowledge or means of knowledge the company is responsible. Doubtless the act of 1874 (Comp. Laws 1879, p. 784, § 29,) has changed the rule of liability for the negligence of employés, and has made the company liable to one employé for injuries caused by the negligence of a coëmployé. But negligence implies omission of duty. Where there is no duty to act, there is no negligence in failing to act; and the same is true where there is no power or authority to act. So where knowledge or notice is brought home to an agent who has no duty or authority in the premises, the corporation cannot be charged with such knowledge or notice, or held liable for negligence in failing to act thereon. Take this illustration: Suppose the attorney of the corporation is informed of a defect in a hand-car. He has nothing to do with the use, control or repair of the car. . He has no duty or authority in the premises. The corporation cannot be charged with the knowledge he possesses, or be held guilty of negligence for failing to act thereon. In short, each agent of a corporation has certain duties and authority. Within their scope his acts are those of the corporation; his knowledge that of the corporation; it is responsible for his acts and omissions. Under the old law, only strangers could as a rule invoke the benefit of this, and hold the corporation for such acts and omissions of the agent. The purport of this statute is to give to employés the same rights in this respect as strangers. We express no opinion on the question as to the measure of liability, nor do we decide whether it is the same in case of an employé as in that of a passenger. (*Hunt v. Railway Co.*, 26 Iowa, 363.) It is enough to hold that it gives to an employé, the same as to a stranger, the right to hold the company responsible for the acts of agents or employés. It does not give them greater rights, or make the corporation responsible to them for the acts and conduct of agents and employés outside the scope of their duties, or chargeable with the knowledge of or notice to employés in such matters. So that this instruction is faulty

39—30 KAS.

in placing no limit or qualification on the general language, "the fellow-servants of plaintiff."

We are constrained to think the error material. The evident import, the natural construction of the language, is, that if any of these forty or fifty laborers, or any other employé knew, or had means of knowledge, the company was liable. And a jury might well infer from the testimony that some one of these many laborers present and witnessing the collision — some of whom rode home on the car that night — knew that the car was unsafe, or made such examination as to be satisfied that prudence forbade its use until after a critical examination by a regular inspector or car builder, while as to the foremen it seems probable that one was not with the men either the 18th or 19th, and knew nothing of the collision or accident to plaintiff until after the latter date; that another was not present on the 18th, and knew little or nothing of the collision until after the accident to plaintiff; and the third, though present at the collision, seems to have regarded it as a very trifling matter. His testimony concerning it would indicate that no injury to the lever handle could possibly have been done at the collision. A jury regarding the foremen as the only agents of the company, disclosed by the testimony, for whose acts or omissions the company was liable, might hesitate to say that either knew of any injury to the lever-handle, or failed to use such care as was reasonable according to all the information he possessed. Now it cannot be that laborers employed merely to shovel dirt and surface the track so far represent the company in respect to the hand-cars which are used to carry them to the places of labor that their knowledge, or means of knowledge of defects therein, is the knowledge of the company. Doubtless, while in motion, the car is propelled by some of them, and while so doing they are in that regard the agents and acting for the company. But outside of that, the general care and control must be in those having charge of the work — the foremen. They represent the com-

pany in that respect, and some omission or negligence on their part must be shown. Perhaps a jury might say that the testimony shows that they knew, or had ample means of knowledge equally with the mass of the laborers, but it cannot be held that they were bound to so find. Hence, the instruction being erroneous, it may have worked injury, and for this reason the verdict cannot be permitted to stand. (*Shedd v. Augustine,* 14 Kas. 285.) The judgment will be reversed, and the case remanded for a new trial.

All the Justices concurring.