MRS. JIMMIE EVERY, *Appellee*, v. CHARLES L. RAINS *et al., as Partners, etc., Appellants.*

No. 16 989.

### SYLLABUS BY THE COURT.

1. EVIDENCE—*Admissions—Pleadings in Another Action.* Where a petition is filed in an action by a party who becomes a defendant in another action, it may be used in evidence on the trial of such other action against the party who filed it, if it contains statements material to the issue on trial, in the nature of admissions or allegations tending to contradict his testimony.

2. INSTRUCTIONS — *Applicability to Issue — Reading Petition Charging Other Acts of Negligence to Jury.* Where evidence was offered tending to support but one of three charges of negligence contained in a petition, and the court in giving instructions read the petition to the jury, but in a separate instruction stated clearly the matters which the plaintiff was required to prove to make out a cause of action, and specified therein only the particular charge of negligence which was supported by evidence, and no request was made otherwise to eliminate or withdraw from the jury the other charges, it is *held*, that there is no prejudicial error in the instructions of which the defendant can properly complain.

3. MASTER AND SERVANT—*Notice to Master of Defect in Roof of a Mine—Liability to Injured Employee.* It is not necessary

that the master should have actual knowledge of the defective condition of a roof in a mine in order to be liable for a personal injury to an employee by the falling of a fragment therefrom, if in the exercise of reasonable care the defect would have been known and the resulting injury avoided.

4. ———— *Negligence in Testing Condition of Roof—Question of Fact.* To ascertain the condition of the roof in a drift of a lead-and-zinc mine the operators of the mine adopted the use of a prod, consisting of a piece of gas pipe, to test the roof and dislodge loose pieces therefrom. Whether the instrument made use of and the method and frequency of its use satisfied the requirement of reasonable care on the part of the master to make the place safe for the servants was, under the evidence, a question of fact for a jury.

5. ———— *Assumption of Risk—Evidence and Findings.* The contention of the defendants that the evidence and findings of the jury require the court to hold, as matter of law, that the injured employee assumed the risk of the danger by which he lost his life is not sustained.

Appeal from Cherokee district court. Opinion filed April 8, 1911. Affirmed.

*William F. Sapp, Andrew S. Wilson,* and *S. C. Westcott,* for the appellants.

*E. E. Sapp, H. C. Finch, T. T. Burr,* and *Spencer, Grayston & Spencer,* for the appellee.

The opinion of the court was delivered by

BENSON, J.: This action was brought by a widow to recover damages for the death of her husband, caused by the alleged negligence of the defendants in the operation, as partners, of a lead-and-zinc mine. Defendants Griggsby and Elliott admit that they were operating the mine at the time of the injury, but deny that the other defendants were their partners or interested in the business. The other defendants deny the partnership, and deny any participation in the business until after the injury. The plaintiff recovered a judgment against all the defendants.

Every was a laborer in the mine. Sometime before

36—84 KAN.

the accident the mine had been leased by the owner to Clary & Schultz, who had by written agreement given to Griggsby & Elliott the right to mine and hoist ore to the surface, where it was received and crushed by Clary & Schultz, and after paying the royalty the proceeds were divided between these firms. Clary & Schultz had nothing to do with the mining operations underground. Afterward Griggsby & Elliott became associated with the other defendants, under the name of the Mineral King Mining Company, to continue the mining operations and business before that time carried on by Clary & Schultz and Griggsby & Elliott.

Every was killed while at work in the mine on the 21st day of October, 1909. He was shoveling ore into a tub which stood on a push car in a drift about 100 feet from the shaft. His duty was to fill the tub, push the car to the shaft and there attach it to the hoisting apparatus, and return with another tub and repeat the operation. Thirty feet beyond where he was at work another laborer was drilling into the face of the mine, preparatory to blasting. Every had just filled his tub and started to push it to the shaft when he received a signal that a shot was about to be fired, and he, with other laborers, went on to the shaft for safety. The shot was fired, after which the signal "that's all" was given by the shot firer, in pursuance of his duty. The signal was a notice to the laborers to return to their work. About five minutes afterward, while Every was going back to his work and when he was within twenty feet of that place, a piece of soft rock fell from the roof, inflicting the injury from which he died. The drift varied from about fifteen to fifty feet in width, and from twenty-five to seventy feet in height. There was evidence tending to show that at the place of the accident it was forty-five to fifty feet high and fifty feet wide. Fifteen or twenty feet from this place there had been a cave-in at the side of the drift, extending to the roof and opening to the light, so that the roof could

be seen.   Along one side of the drift, near this place, was a bench that had been left about fifteen feet from the floor.   It was customary to prod the roof from time to time with a piece of gas pipe about fifteen feet long, and at this place, where the roof was high, the person using the prod mounted this bench, but the entire roof could not be reached by this means and the prod was used only so far as it could be done.   This prodding was the means adopted to ascertain whether the roof was safe.   The roof was prodded in the morning of the day before the injury.   Griggsby and Elliott were practical miners, and were in the active control of the operations.

There was evidence tending to prove that prodding should be done after each shot, the shots having a tendency to loosen the roof; also, that the proper time for firing shots was in the evening, although it was testified that different mines had different regulations. The roof was of flint rock, and the fragment that fell had not been noticed before its fall.   The cave-in occurred about fifteen or twenty days before this accident.

The negligence complained of and submitted to the jury was the failure properly to prod the roof.

The jury found that the drift was lighted by the opening caused by the cave-in; that the roof of the mine could be seen by the miners; that Every was an experienced man; that he could see a person prodding the roof if that work had been in progress while he was returning from the shaft to his place.   There was no evidence of the frequency of shots other than that a shot or shots had been fired the previous day.   The evidence tends to show that this was after the prodding had been done in the morning of that day.

It is contended that the evidence is insufficient to sustain a finding of negligence against any of the defendants, and also that Every had full knowledge of the dangers and assumed the risk incident to his serv-

ice. It is also earnestly contended that none of the defendants, except Elliott and Griggsby, was a partner in the business or had any interest in the mining operations when the accident occurred.

It was alleged in the petition that the defendants, as copartners, were carrying on the mine under the name of the Mineral King Mining Company. The principal testimony to prove that the defendants other than Elliott and Griggsby were partners was a petition in a case wherein all these defendants, as plaintiffs, had sued the owner of the mine, Mr. Schermerhorn, for failure to make them a lease. This petition was signed by the same attorneys who represented the defendants here. In that petition it was alleged that the plaintiffs named therein were a copartnership; and that the copartnership was formed on or about the first day of October, 1907. To this petition several exhibits were attached, containing items dated in October prior to the date of the accident. After this action was commenced an amended petition was filed in that action changing the date of the formation of the alleged partnership to November 1, and omitting from the exhibits all items dated before that time.

It is insisted that there was error in admitting the petition in evidence. All the defendants except one testified that the Mineral King Mining Company was formed about November 1, but no one gave the exact date. It seems that Mr. Elliott organized the company, and that the different individuals joined at different dates—according to their testimony, near the first day of November, and each one testified that he had nothing to do with the mining operations before that time. It also appears from their testimony and that of the owner of the mine that the old lease to Clary & Schultz was surrendered on that day. No testimony was offered explanatory of the mistake in the dates given in the petition offered in evidence.

There was also some evidence of accounts kept with

laborers in the mine, and of checks given in payment, but no checks, books or other written evidence was offered to show when the change in the management of the mining operation occurred. The agreement between Clary & Schultz and Griggsby & Elliott was dated September —, 1907, and the jury found that to be the date upon which the defendants obtained the lease from the owner. This finding may have been based upon the belief of the jury that Griggsby & Elliott obtained the lease for the Mineral King Mining Company. However that may be, the date upon which the mining company obtained their lease is quite immaterial, the vital question being whether the defendants, or Griggsby & Elliott alone, were the employers of this man at the time he was injured. The jury found that the defendants commenced their mining operations on or about October 1, 1907. The petition in the case against Schermerhorn, if admissible, contained some evidence that the partnership, composed of all the defendants, was in existence as early as October 1. There was no positive evidence on the part of the defendants of the exact date, although they testified that it was after the accident.

It seems to be conceded that the finding that the defendants other than Elliott and Griggsby were copartners with them in carrying on the mine at the date of the injury is based principally on the admissions contained in the petition in the Schermerhorn case; therefore the ruling upon the objection to the petition in that case is material. It is held in this state that such a pleading is admissible when filed in the same action. (*Arkansas City v. Payne,* 80 Kan. 353.) The reasons stated in support of that ruling apply as well to pleadings filed by the same party in another action, and it was held in *Solomon Rld. Co. v. Jones,* 30 Kan. 601, that a verified petition in another action is admissible. (See, also, *Bank v. Edwards,* ante, p. 495.) While a verification may give additional probative force to the

pleading as evidence, it is not necessary to make it admissible in evidence against the party filing it. (2 Wig. Ev. § 1066; 2 Enc. L. & P. 184.) The defendants were at liberty to show that the dates were inserted in the petition through mistake or otherwise explain the allegation that the partnership was in existence before the date of the injury to Every, but they did not do so; and, notwithstanding their testimony that the partnership was formed afterward, the finding of the jury in harmony with the allegations in the petition filed in another action before the plaintiff's claim was sued upon, being sustained by competent evidence, can not be overturned on appeal.

The contention of the defendants that there is not sufficient evidence of negligence to sustain the verdict is based principally on the proposition that the defendants had no notice or knowledge that the roof of the mine was defective. Two of the defendants were practical miners and in personal management of the mining operations. The fragment which fell was of different formation than most of the roof. While there was evidence that it could not be seen, it appears that it might have been discovered by prodding, the means resorted to to ascertain the condition of the roof; but it was a question for the jury whether it might have been. The last use of the prod before the injury was on the morning of the previous day, although shots had been fired afterward on that day, which, as the evidence tends to show, would have a tendency to loosen fragments of the roof. Nothing was done by prodding or otherwise to ascertain its condition when work was commenced the next day, nor at any time before Every was killed. The prod used would not reach over the whole roof at the place of the injury, and the system of inspection by the means adopted seems to have lacked method and that thoroughness reasonably commensurate with the dangers attending the hazardous operations of mining, especially when accompanied by the use

of powerful explosives.  Defendant Elliott testified that the prod was used "to get down any loose pieces that might be in the roof after we did some shooting.  That roof had been prodded all over.  I don't remember exactly the last time.  I prodded it sometimes, but Hulvey [the shot firer] did it most of the time.  He run the machine, and it was his place to prod it mostly.  Anybody who got scared prodded it."  Hulvey was the employee who gave the signal to call the men to come back to work, and the recall implied that it was safe for them to do so.  Considering the inability to reach over the roof with the instrument used, and the lack of any definite method or particular times for making the inspection, the jury were justified in finding that the charge of negligence based upon the failure properly to prod the roof was sustained.  That the defendants did not know of the defect will not excuse them if in the exercise of reasonable care it would have been discovered.  (1 Shear. & Redf. Neg., 5th ed., § 206; *Wellston Coal Company v. Swift,* 65 Ohio St. 70; 87 Am. St. Rep. 559, note; *Solomon Rld. Co. v. Jones,* 30 Kan. 601; 4 Thomp. Com. L. of Neg. § 3794.)

In *Griffin v. Brick Co.,* ante, p. 347, it appeared that a laborer had been injured by a rock which had fallen from the face or wall of an excavation at the foot of which he was working in a shale pit.  The court said:

"It was the duty of the appellee to use reasonable care to put the bank in a condition and keep it in a condition which would render the operation of cars on the car track reasonably safe from all caving naturally to be anticipated in consequence of the steam shovel's work; and this duty required that the bank be inspected with the care and frequency which reasonable prudence demanded, under all the conditions presented." (p. 348.)

The evidence tends to show that the defendants knew that it was necessary to inspect this roof to guard against such injuries as the one causing the death of Every, and it was a proper question for a jury, un-

der the circumstances presented, whether reasonable care had been exercised in making the inspection. The suggestion that the laborer could observe the defective roof as well as the employer is not persuasive. It was not the duty of the laborer to make inspection, but to attend to his work, while it was the duty of the employers to exercise proper care to make the place reasonably safe. It does not appear that the defect was open to the ordinary observation of the workmen or that they were aware of the danger.

No proof was offered to support any claim of negligence except the one already referred to, but two other charges of negligence were contained in the petition, and in giving the instructions the petition was read to the jury. The defendants claim that the court thereby submitted issues without proof. In stating what the plaintiff must prove to make out her case the court instructed the jury that if the defendants "failed to properly prod the roof of the mine in question at the point where the deceased received the injury, and that the mine at that point was not properly cared for in a reasonably safe and suitable manner, and that by reason of the neglect . . . this deceased met death . . . then . . . your verdict should be in favor of the plaintiff." In this instruction the court tersely stated the facts which the plaintiff was required to prove to make out a case, and the jury could not have been misled by the mere reading of the petition. Besides, if the defendants feared that they might be prejudiced by such reading, a request should have been made for an instruction eliminating every charge of negligence except the one referred to in the instruction quoted.

It is insisted that Every assumed the risk of the injury, and that this is shown by the evidence and by the special findings. It is said that the findings show that he was as well able to determine whether the drift was dangerous as all others who were working there. This

may be true and yet the defendants may be liable. The risks assumed by a servant in such a situation are stated in *Griffin v. Brick Co.,* ante, p. 347, and need not be re-stated here. If Every knew that proper inspection had not been made, there is no finding that he was aware of the danger arising from the failure. It was held in *King v. King,* 79 Kan. 584, a case involving injuries resulting from the use of a defectively constructed machine, that a servant, to be chargeable with knowledge of a defect, must not only know the physical facts in relation thereto but must also know and appreciate the danger resulting therefrom. (*Brick Co. v. Mussulman,* 78 Kan. 799; *Carillo v. Construction Co.,* 81 Kan. 823.)

"The servant does not accept the risks of unknown, latent, unseen or obscure defects or dangers, such as the servant would not discover by the exercise of ordinary care and prudence, having reference to his situation, but such as the master ought to discover by exercising the duty of inspection which the law puts upon him to the end of seeing that the premises, tools and appliances with respect to which the servant is required to labor are in a reasonably safe condition." (4 Thomp. Com. L. of Neg. § 4641.)

Other objections to the proceedings, referred to in the brief, have been considered, but further comment is deemed unnecessary.

The judgment is affirmed.