ED. REYNOLDS, *Appellee*, v. THE NEW CENTURY MINING
COMPANY, *Appellant*.

No. 18,158.

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Mining Company—Duty to Provide Safe Place
for Employees to Work*. It is the duty of a mining company
to exercise ordinary diligence to keep the roof of its mine
reasonably safe for its laborers. This duty requires in-
spections with such care and frequency as reasonable prudence
demands in the conditions existing.

2. —— *Same*. The evidence is examined and held sufficient to
support a finding that the defendant was negligent in failing
to properly examine and prod the roof of a zinc mine from
which a boulder fell and injured the plaintiff, a laborer therein.

3. WITNESS—*Cross-examination—Not Error*. A witness who had
procured a statement from the plaintiff of his injuries, having
testified in direct examination that he was acting at the in-
stance of an attorney, was asked whom the attorney repre-
sented, and answered "the insurance company." This answer
was within the reasonable limits of cross-examination.

4. TRIAL—*Instructions Urging Importance of Making True Find-
ings*. An instruction which impresses upon the jury the im-
portance of making true findings of fact from a candid con-
sideration of the evidence is not prejudicially erroneous be-
cause it included a statement that a mistake of law may be
corrected by the court while a mistake in a finding of fact
upon conflicting evidence can not be corrected and other find-
ings substituted.

Appeal from Cherokee district court. Opinion filed
July 5, 1913. Affirmed.

*William F. Sapp, A. S. Wilson,* both of Galena, *A. M.
Keene,* and *E. C. Gates,* both of Fort Scott, for the ap-
pellant.

*P. D. Decker,* of Joplin, Mo., *C. A. McNeill,* and *E. V.
McNeill,* both of Columbus, for the appellee; *Charles
Stephens,* of Columbus, of counsel.

The opinion of the court was delivered by

BENSON, J.: The defendant appeals from a judgment in favor of the plaintiff for damages for personal injuries suffered in the defendant's lead and zinc mine in which he was a laborer. The evidence tended to prove that the plaintiff and a fellow laborer were working a steam drill, but on the day when injured they had been breaking boulders and "brunoing." Their working day ended at five o'clock in the afternoon. About twenty minutes before that time, having finished that work for the day, they went into another part of the mine about 100 feet distant for some picks to be sent out and sharpened. When they were about forty-five feet from the face of a drift where other laborers were at work, a boulder fell from the roof of the mine and injured the plaintiff. The pillars in the mine are from twenty to ninety feet apart. The roof where the rock fell was thirty feet high and was described as being of a sandy formation composed of boulders, selvedge and flint; the selvedge being soapstone, rock and sand run together. Shooting was done in that mine once and sometimes twice a day, sometimes at noon and always at night. The tendency of shooting was to make the roof scaly and cause it to fall, requiring frequent trimming, every day and after every heavy shot. Heavy shots were fired nearly every night. Trimming was done by means of a prod pole or a ladder and pick. There was evidence that at the place where the rock fell the roof had not been trimmed for four weeks next preceding the injury.

Among other charges of negligence was that of a failure to properly inspect, examine and trim the roof, take down boulders and slabs liable to fall, and to properly support it, whereby it became insecure and dangerous. It was also charged that the defendant negligently failed to make the place reasonably safe.

13—90 KAN.

In support of a demurrer to the evidence the argument is made that there was no testimony to show any notice or knowledge of any defect in the roof. The lack of actual knowledge of such a particular defect is not sufficient to relieve from liability if in the exercise of proper care the defective condition would have been discovered. It was the duty of the company to exercise ordinary diligence to keep the roof reasonably safe for its laborers, and this duty required inspections to be made with such care and frequency as reasonable prudence demanded in the conditions presented. (*Griffin v. Brick Co.*, 84 Kan. 347, 114 Pac. 217; *Every v. Rains*, 84 Kan. 560, 115 Pac. 114.) The evidence tended to show that the formation of the roof was such that an examination was required after each heavy shot. Whether this duty had been performed with reasonable diligence was a question for the jury.

In answers to questions submitted by the defendant the jury found that no person in the employ of the defendant knew of the defect in the roof before the accident, and that the plaintiff could not by the exercise of ordinary care have known of the defect. It is contended that these findings exonerate the defendant, because if the plaintiff, an experienced miner, could not by reasonable care have known the danger, the defendant could not. This argument ignores the relative duties of each and regards the laborer as an inspector. His duty is to perform the work required of him, and that of the employer is to use proper care to make the place reasonably safe. It was said in the Every case:

"The suggestion that the laborer could observe the defective roof as well as the employer is not persuasive. It was not the duty of the laborer to make inspection, but to attend to his work, while it was the duty of the employers to exercise proper care to make the place reasonably safe. It does not appear that the defect was open to the ordinary observation of the

workmen or that they were aware of the danger."
(84 Kan. 568.)

This does no violence to the rule stated in *Morbach
v. Mining Co.*, 53 Kan. 731, 37 Pac. 122, that when the
employer and employee are equally competent to judge
of the risks and both have equal knowledge of the sur-
roundings the employer can not be culpably negligent
to the employee. The miner is not charged with the
duty of examining the roof high above his head as he
works or goes about in the mine. He has other duties.
If he knows of a defect and still neglects reasonable
precautions for his own safety, or if it is obvious to
him while at his work, other considerations arise, but
such a situation is not presented here.

The ground foreman testified that he examined the
roof in question on the morning of the injury and that
there was nothing from which he could ascertain the
presence of danger. On cross-examination he said:

"I looked at that roof that morning between seven
and nine o'clock. I was right to the roof, where I could
lay my hand on it. From the place where the rock fell
from I was about 12 or 15 feet."

The jury were asked to state what negligence if any
they found on the part of the company and who was
the negligent employee. They answered:

"By the testimony of the ground foreman in not
properly examining and prodding roof within ten feet
of where boulder fell."

It was a question of fact, upon the evidence of the
foreman himself and all the other testimony, whether
this prodding was properly done. In view of the ma-
terial of the roof and the ordinary effect of the shots
upon it diligence was required in inspection and care
commensurate with dangers reasonably to be foreseen.
It certainly can not be said as matter of law that it was
sufficient to look at the roof without otherwise testing
it. Whether prodding it at points ten feet or more

away was proper diligence was a question for the jury in the circumstances shown.

Complaint is made of rulings concerning testimony. The plaintiff was working on the day in question with another who was the head man on the machine (the drill). He was asked what this man said to him when they had finished all that could be done at that time and place, as before stated. The answer was:

."Well, he gets up and starts off and says, 'Come on and we will go over to this place and see something about getting some picks and send them out.' I had been working over there off and on breaking some 'boulders and pulling down some dirt, and I thought if there was n't anything else to do I would put in the time until quitting time, and I just thought we would see the boss."

This fellow workman had already testified that he had said to Ed (the plaintiff) : "Let's go and get some picks and send them out and have them sharpened," and that it was the custom when through working in one place to go to another and help out until quitting time. If the conversation between these men ought to have been excluded, still its admission was not prejudicial. If the men had the right to go where they did, what they said about it was unimportant. Besides having stated what the errand was the declaration of the reason by one to the other was of no consequence. The ruling could not have affected the substantial rights of the defendant. (Civ. Code, § 581.)

A witness was produced by the defendant who identified a statement of the plaintiff concerning his injuries made soon after the occurrence. This witness testified that he obtained the statement at the instance of an attorney, whose name he gave. On cross-examination it appeared that plaintiff was in bed at the time, apparently suffering from the injury, and that in taking the statement the witness represented the attorney he had named. He was then asked whom this attorney represented, and he answered, over the defend-

ant's objection, "The insurance company." Other questions were asked to test the witness's knowledge of the fact that the attorney represented the insurance company, to which the substance of his answers was that he (the witness) represented the attorney and he supposed that the attorney represented the insurance company. The argument is made that this cross-examination tended to prove a fact prejudicial to the defendant, that is, that the defense was being made by an insurance company, and was erroneous. When the defendant had shown by its own examination that the statement was obtained at the instance of the attorney named, inquiry to ascertain whom the attorney represented was readily suggested. If it was competent to inquire whom the witness represented in obtaining the statement, it was equally competent to inquire whom the attorney represented. Evidence was admissible, although perhaps not very important, to show that in procuring the statement the witness acted by authority of some one having a right to the information. Both the direct and cross-examination, so far as reasonably necessary to show that fact, were competent. It is true that several similar questions were asked after the first, but the answers added nothing to the effect of the one first given.

The defendant complains of an instruction in which the court sought to impress the jury with the importance of making correct findings of fact, stating, in substance, that while mistakes of law might be corrected by the court, findings of fact upon conflicting evidence could not be thus corrected and different findings substituted. In its entirety the statement is true, for while the district court may correct findings of fact not approved by the judgment and conscience of the judge, it can not substitute other findings, but can only refer the issue to another jury. The instruction was only designed to impress upon the jury the im-

portance of making findings from a careful and unbiased consideration of the testimony.

Criticism of another instruction is based upon its phraseology rather than its substantial meaning. The court said:

"It was the duty of the defendant under the law of this state to furnish to the plaintiff a reasonably safe place in which to work." . . .

It is argued that the words "to exercise ordinary care," or some equivalent qualification, should have preceded the words "to furnish." The criticism of a like instruction was considered at length in *Kamera v. Boiler Works*, 82 Kan. 432, 108 Pac. 806. It was there held that in view of other instructions the omission was not fatal. In this case the jury were informed that the defendant could only be held liable for failing to use ordinary care to prevent injury to him, and that the negligence or want of care alleged was in failing, among other things, to inspect and examine the roof of the drift to ascertain if rocks or boulders were liable to fall. The instructions were clear in this respect, and for the reasons stated in the Kamera case it must be held that the omission of the clause referred to was not material. Especially is this true in view of the specific finding of negligence in this respect.

The legal questions involved in this case, while important, are not novel. They have been considered in the cases cited, and others in this court. The findings of fact and verdict are supported by competent evidence. No material error is perceived in the proceedings.

The judgment is affirmed.