No. 21,216.

HARRIET M. BERRY, as Administratrix, etc., *Appellee*, v. CHAUNCEY DEWEY et al., *Appellants*.

No. 21,217.

WILLIAM ROY BERRY, *Appellee*, v. CHAUNCEY DEWEY et al., *Appellants*.

### SYLLABUS BY THE COURT.

1. CHANGE OF VENUE—*Disqualification of Regular Judge—Calling in Judge of Another District.* Where a change of venue is granted on account of the disqualification of the regular judge, and under section 57 of the code (Gen. Stat. 1915, § 6947) the judge of another district is called in, who, after trying some of the issues in the case, declines, on account of press of business in his own district or for any other reason, to act further, it then becomes the duty of the regular judge of the district court where the case is pending to request the judge of some other district to attend and serve as judge. The jurisdiction of the judge first called in ends with his refusal longer to sit as judge in the case.

2. MOTION FOR JUDGMENT—*No Other Pleadings Required—Notice of Hearing.* Answers or other pleadings to a motion are not required, and there is no provision for making up issues for the trial of motions. On the hearing of a motion for judgment against the defendant on a stipulation in the action, the defendant, by filing an answer to the motion, does not thereby become entitled under the provisions of section 313 of the code (Gen. Stat. 1915, § 7215) to three days' notice of the hearing.

3. SAME—*Written Stipulation—Used on Application for Continuance—Estopped to Deny its Validity.* Where the defense to a motion for judgment on a written stipulation is, that it was not signed by the defendants but by an attorney who had no authority to act for them, it is proper to admit in evidence an application for a continuance of the action sworn to by the defendants' attorney, and which refers to the stipulation as a ground for the continuance; and *held*, further, that having made use of the stipulation to obtain the advantage of a continuance, the defendants should not be permitted to interpose as a defense to the motion the fact that the stipulation was not signed by them individually.

4. ACTIONS FOR DAMAGES—*Settlement by Written Stipulation—Time of Payment Fixed—Interest on Payments.* A written stipulation for settlement of a damage suit fixed the defendants' liability to the plaintiff at the sum of $4,500, which amount the defendants agreed to pay to the plaintiff when certain criminal cases pending against the

defendants were finally terminated, and it was agreed that if the sum was not paid within ten days after the final termination of the criminal actions, judgment should be rendered in favor of the plaintiff and against the defendants for the sum agreed upon. When the criminal prosecutions terminated, defendants brought an action to enjoin the enforcement of the stipulation and delayed the taking of judgment for several years. *Held,* that it was proper for the court to include in the judgment interest, on the sum agreed to be paid, from the time the criminal cases terminated.

5. CONTINUANCE REFUSED—*No Abuse of Discretion.* On the facts stated in the opinion, it is held there was no abuse of discretion in the refusal to grant a continuance on account of absent witnesses, because no diligence was shown.

Appeals from Sherman district court; JACOB C. RUPPEN-THAL, judge *pro tem.* Opinion filed February 9, 1918. Affirmed.

*William R. Smith,* of Topeka, *James H. Harkness,* and *Clifford Histed,* both of Kansas City, Mo., for the appellants.

*A. M. Harvey,* of Topeka, and *L. W. Colby,* of Beatrice, Neb., for the appellees.

The opinion of the court was delivered by

PORTER, J.: On April 17, 1905, Harriet M. Berry, as administratrix of her husband's estate, brought her action against the defendants for damages for the alleged unlawful killing of her husband by the defendants in a shooting affray which occurred June 3, 1903, and William Roy Berry sued to recover damages for injuries he received in the same affair. Actions were also brought against the defendants by other persons for like damages. At this time criminal prosecutions for the murder of Daniel P. Berry and others were pending against these defendants; and sometime after the civil suits were commenced there was a written stipulation for the settlement of three of the civil actions, by which it was agreed that the defendants' liability to the plaintiffs in three of the actions amounted in the aggregate to the sum of $10,000, which amount was to be paid to the plaintiffs when all the criminal cases connected with or growing out of the transactions or injuries described in the civil actions had been finally terminated; and of the aggregate sum, Harriet M.

Berry, as administratrix, was to be paid $4,500, and William Roy Berry $1,000. The stipulation recited that it was a compromise of the civil cases, and that no part of the sum was due or to become due until the final termination of the criminal prosecutions.

On May 2, 1905, the state dismissed all the criminal cases "without prejudice," and thereupon the attorneys for these plaintiffs placed the stipulation on file, together with a motion for judgment in accordance therewith. Chauncey Dewey appealed the criminal cases to the supreme court, contending that they should have been dismissed with prejudice. That appeal was decided in favor of his contention February 9, 1907. (*The State v. Dewey*, 73 Kan. 739, 88 Pac. 881.) The defendant, Dewey, then brought a suit in the federal court to enjoin these plaintiffs from enforcing the stipulation, and that action was not determined until June, 1915, when the injunction was denied and the restraining order dissolved. When these cases were called for trial at the June term, 1915, Judge Chas. I. Sparks, district judge, stated that he was disqualified by reason of having been of counsel for plaintiffs in the actions, and, after a consultation with the attorneys, announced that he would request Judge W. S. Langmade, of the Seventeenth judicial district, to try all the Berry cases, and Judge Langmade was called in to try these cases. The selection was in accordance with the provisions of section 6947 of the General Statutes of 1915. When the cases were called for trial before Judge Langmade, defendants filed a written protest against any proceedings upon the motions for judgment and asked that the same be stricken from the files, and also asked for a jury trial. These matters were taken under advisement by Judge Langmade until May 26, 1916, when the protest of the defendants was overruled, but their demand for a jury trial sustained. One of the civil suits in which there was no stipulation for judgment had, in the meantime, been tried before Judge Langmade. On May 26, 1916, when Judge Langmade ruled on the motions and protests filed by the defendants' he announced that on account of press of business in his own district, he would be unable to proceed further in the Berry-Dewey cases. All the cases went over until on the 22d day of November, 1916, when Judge Sparks, sitting as the

regular judge of the court, made an order calling in Judge J. C. Ruppenthal, of the twenty-third district, to try the cases, for the reason that Judge Langmade was unable to be present and serve as judge. The journal entry of the district court of Sherman county recites that the matter came on for hearing at that time, the attorneys for plaintiffs being present, defendants not appearing. It recites that the presiding judge of the district was disqualified to sit, the proceedings by which Judge Langmade had been called in to preside, the fact that he was no longer able to attend and had declined to sit further; it recites that both Judge Langmade and Judge Sparks had requested Judge Ruppenthal to attend as judge and try the cases, and the taking of the oath by Judge Ruppenthal. It appears also that Judge Langmade granted a motion of the plaintiffs for a change of venue, and Judge Ruppenthal was called in. On November 28, 1916, the cases were called for trial by Judge Ruppenthal, at which time the defendants objected orally and by answer to his proceeding with the cases. These objections were overruled, and the cases were tried before a jury, and judgments rendered in plaintiffs' favor.

1. The first question raised by the appeal is whether Judge Ruppenthal had jurisdiction to sit as judge. The defendants contend that Judge Langmade having been called in to try the cases in the first instance by reason of the disqualification of the regular judge, he could not divest himself of jurisdiction by refusing to try the cases; that he was the only judge that could sit until he became disqualified for some of the statutory reasons, and that any attempt to transfer the cases to Judge Ruppenthal was without authority and void. This contention is readily disposed of by the fact that Judge Sparks, whose duty it was to see that the business in his court proceeded, notwithstanding his own disqualification to sit in the cases, made an order calling in Judge Ruppenthal when it appeared that Judge Langmade was unable to proceed further in the cases. There is nothing substantial in the contention that, because Judge Langmade was first selected to sit, he must continue as judge unless disqualified by reason of interest in the proceedings, or because of some of the statutory disqualifications. He was not obliged in the first instance to accept the appointment; had he declined, it would have been the duty of

the regular judge to call in another judge to try the cases. The situation was no different because, having assumed jurisdiction for a time and presided in the cases, Judge Langmade was prevented from acting further because of his duties in his own district. For reasons which he deemed sufficient, he declined to try these cases; and while we agree with defendants' counsel that his refusal to sit further amounted to a resignation, we cannot agree with counsel's contention that any confusion resulted by such resignation. When the facts became known to the regular district judge, it became his duty to make an order calling in another judge as provided by the statute. This is exactly what Judge Sparks did, and the validity of the proceedings is not in any sense affected by the fact that Judge Langmade thought proper to grant a change of venue also. We think the question is so plain as not to require the citation of authorities; and we know of none from other states involving the question.

2. In support of the contention that it was error to refuse defendants' request for three days' time to prepare for trial after the filing of the answer to the motion for judgment, section 313 of the code is relied upon:

"Actions shall be triable on the issues of fact in ten days after the issues are made up. Issues of law and motions may be tried by the court or judge in term-time or vacation, at such times as the court or judge may fix, after reasonable notice, which shall not be less than three days." (Gen. Stat. 1915, § 7215.)

There is no provision for making up issues for the trial of motions. A motion is one thing and an action is another. No answer or other pleading to the motion was required, although the practice of stating in writing the contentions against the allowance of a motion may in many cases be entirely proper. The motion had been on file for many years, and the defendants had more than three days' notice of the hearing before the cases were called.

3. It is said error was committed in permitting plaintiffs to offer in evidence an application for a continuance of these cases made in the year 1906. The so-called answer to the motion for judgment on the stipulation alleged as one defense that the stipulation, which was signed on the part of plaintiffs by Mr. Colby, their attorney, and in the names of all the de-

fendants by "W. S. Morlan, their attorney," is not binding upon the defendants, because Morlan was their attorney only in the criminal cases, and had never represented them in these cases, and had no authority to bind them by the stipulation. The settled rule in this state is, that abandoned pleadings or other papers filed in the action are admissible in that action. (*Every v. Rains*, 84 Kan. 560, 115 Pac. 114, and cases cited.) The reasons apply also to pleadings or papers filed by the same party in another action. (*Solomon Rld. Co. v. Jones*, 30 Kan. 601, 2 Pac. 657; *Arkansas City v. Payne*, 80 Kan. 353, 102 Pac. 781; *Bank v. Edwards*, 84 Kan. 495, 115 Pac. 118.) In *Watt v. Railway Co.*, 82 Kan. 458, 108 Pac. 811, it was held that an abandoned pleading should be received in evidence for what it was worth, and in *Meek v. Deal, Adm'x*, 87 Kan. 319, 124 Pac. 160, a judgment was reversed because of the exclusion of an original petition offered in evidence by defendant, containing statements at variance with an amended petition on which the case was tried. But two witnesses were sworn on the trial of the motion. Mr. Colby, one of the attorneys for the plaintiff, testified that Morlan signed the stipulation when Dewey was present and with Dewey's knowledge. Mr. Dewey denied this and said that he had never heard of the stipulation until a long time afterwards. The application for the continuance was sworn to by the late W. H. Rossington. It substantially made the stipulation a part of the application as follows:

"Referring to a stipulation of settlement on file herein, under the same no trial can be had or no determination of the above entitled cause until the criminal cases referred to in said stipulation are finally heard and determined."

The application then stated, in substance, that until the determination by the supreme court of Dewey's appeals in the criminal cases, the plaintiffs "cannot enforce the terms of said stipulation for settlement." There was, of course, no error in introducing the stipulation in evidence for what it was worth, and it might be added that in our opinion it was worth a great deal. Having made use of the stipulation to obtain the advantage of a continuance and delay of these same cases for several years, defendants should not be permitted to interpose as a defense the fact that the stipulation was not signed by

them individually. We think the application for the continuance was admissible and might have been taken notice of by the court, without its introduction, as evidence of a ratification by the defendants. In answer to a special question, the jury found that W. S. Morlan was authorized and empowered by the defendants to make and enter into the stipulation and agreement.

4. The jury returned a verdict in favor of plaintiffs for the respective sums each was to be paid by the terms of the stipulation. Thereupon, the plaintiffs asked the court to render judgment which should include interest on these sums from the 21st of February, 1907. Over defendants' objections the court sustained the motion, and judgment was rendered in favor of Mrs. Berry for $7,140, and in favor of William Roy Berry for the sum of $1,585.35. It is claimed that the court erred in rendering judgment for more than the specific sums agreed upon in the stipulation. The stipulation, after reciting the payments agreed upon for each plaintiff, then proceeds as follows:

"If. after all of said criminal cases have been 'finally terminated, the said sum of ten thousand ($10,000.) dollars is not paid in ten (10) days, judgment may be rendered in said cases in favor of the plaintiffs and against defendants."

Defendants argue that this was an attempt to settle an unliquidated damage suit, and that it was the obvious intention of the parties that judgment should be entered for these specified sums, and not that judgment should be entered upon the stipulation with interest to the time of entering the judgment; and that in the absence of any provisions for interest in case payment was not made, the penalty should not be interest, but a judgment entered. Attention is also called to the fact that a verdict rendered by a jury does not bear interest from the date of its rendition to the time judgment is rendered, and to the statutory provision that creditors shall be allowed interest at six per cent per annum when no other rate of interest is agreed upon for money after it becomes due, or for money due on a settlement of account from the date of ascertaining the balance; and it is urged that interest cannot be allowed by reason of the statute. There was no stipulation

that the amount should become due "except when a judgment should be rendered."

There is nothing ambiguous about the stipulation. It agrees upon the amount each plaintiff was entitled to and the time when it should become due. The actions were no longer unliquidated damage suits. The damages became liquidated and determined by the stipulation, and plaintiffs, in default of payment within ten days after the final disposition of the criminal cases, were entitled to their separate judgments for these liquidated sums. Under the statute the plaintiffs were entitled to interest at six per cent per annum for the sums due, after they became due. It there was any question for submission to a jury in these cases, it could not have involved the amount of the judgments to be rendered. The only issue that should have been submitted to a jury, conceding that it was a jury case, was whether the defendants were bound by the stipulation; and as to that, we think the court would have been justified in sustaining the motion without submitting any question to a jury. This conclusion disposes of the contentions urged in the appeal to the effect that the plaintiffs were not entitled to recover because the motion stated no facts sufficient to constitute a cause of action. The plaintiffs were entitled to judgment on the stipulation on file in the cases. For the same reason, it is unnecessary to comment upon the admissibility of the testimony of Mr. Colby to a conversation between himself and W. S. Morlan, who had been attorney for the defendants in the criminal cases. Whether the evidence would ordinarily be admissible need not be determined, since it could not have prejudiced the defendants. So with respect to the admission of other evidence complained of.

5. As a second defense to the validity of the stipulation, defendants alleged that it was void and against public policy, because it was entered into for the purpose of compounding a felony. No evidence was introduced on this defense, but it is urged that it was an abuse of discretion to refuse their application for a continuance on the ground of the absence of William Roy Berry and other witnesses, who, the affidavit for continuance alleged, would, if present, swear that such was the purpose of the plaintiffs in agreeing to the stipulation. There was no abuse of discretion in refusing the application,

because there was no diligence shown; indeed, after all the delays in these cases and the many years defendants had for securing testimony to establish whatever defenses they intended to urge, it is doubtful if they could have shown such diligence as would appeal to a court's discretion or have entitled them to a further continuance.

The judgments are affirmed.

WEST, J., not sitting.